## Spier *v*. The State.

1. The evidence warranted the jury in finding the accused guilty of an assault with intent to murder.
2. The newly discovered evidence was not such as could change the result, nor was due diligence exercised in respect to it.
3. The presiding judge was justified by the facts in refusing to set aside the verdict because of misconduct of the jury in leaving the jury-room after they had agreed upon their verdict and sealed it up, and on account of the heat of the weather occupying the court-room and the veranda of the same under strict charge of two bailiffs, who prevented all intercourse by others with the jury during the night. Nor was the verdict vitiated by the jury, or some of them, eating watermelons on the veranda while so in charge of the bailiff.　　　　　　*Judgment affirmed.*

August 1, 1892.

Criminal law. Evidence. Jury. Before Judge Boynton. Spalding superior court. August term, 1891.

The defendant was convicted of assault with intent to murder. A new trial was denied. His grounds were: (1) Verdict contrary to law and evidence; (2) newly discovered testimony; (3) misconduct of jury and bailiffs. The evidence for the State showed as follows: Gossett and Daniel were policemen in Griffin. They saw the defendant drunk one morning, and Gossett tried to persuade him to go home. About half past nine o'clock of the same morning they found him lying on the railroad track, forty to sixty feet west of a crossing, between the crossing and New Orleans street, with a knife in his hand. They arrested him and put him in the guardhouse. They did not treat him unkindly, and used no more force than was necessary; neither of them hit him; and no one treated him roughly. They did not arrest him in the railroad cut. He was released that afternoon, and about five o'clock he went, accompanied by one Wright, to Gossett's house and called him out to the gate. Defendant said, " Good evening," and Gossett said, " Good evening; won't you come in?" He said,

"No, I haven't time." As he said nothing more, Gossett asked, "Gentlemen, is there anything I can do for you?" Defendant replied, "Yes, I want to see you a minute." His right hand was in his pocket, his left on the fence. He said, "Why did you treat me like you did this morning?" Gossett replied, "I don't know that I treated you amiss; if I did I didn't intend to." Thereupon defendant drew from his pocket a pistol and fired at Gossett, with the remark, "G— damn you, I want to kill you anyhow." Gossett knocked the gate open; defendant dodged down, turned the pistol and threw it into Gossett's breast. Gossett seized it, and as he did so it was fired again. Gossett was wounded by both shots. He held the defendant until assistance came, and turned him over to other policemen. To one of these he said he had shot Gossett twice, "and G— damn him, he wished he had shot him four times."

Outside of the defendant's statement there was no substantial conflict with what is above stated, except that there was some testimony to the effect that Gossett and Daniel treated the defendant roughly and that Gossett hit him with his club at the guard-house.

The newly discovered testimony was, in brief, that the defendant was arrested in the railroad cut and not at the place testified to by Gossett and Daniel, and that he was walking towards his home when arrested, was not boisterous, and in returning to the guard-house he seemed to be struggling with Gossett.

As to the third ground the third head-note is sufficient for this report.

STEWART & DANIEL and DISMUKE & MILLS, for plaintiff in error.

J. H. TURNER, solicitor-general, by HARRISON & PEEPLES, contra.