## 1573. DENTON *v.* THE STATE.

RUSSELL, J. It is error requiring the grant of a new trial, in a case where testimony tending to show a dying declaration is submitted to the jury, not to inform them that caution should be observed in the use of such evidence; and that although they may be satisfied that the alleged statement was made by the declarant in articulo mortis and in the consciousness of approaching dissolution, yet, in determining its probative value, the circumstances under which these statements were made may be considered with a view of ascertaining whether the deceased, at the time of his dying declaration, knew the facts related by him, or was only stating inferences and conclusions from facts which may or may not have rested in his knowledge, and whether the physical condition of the declarant or the circumstances of violence and surprise were calculated to impair his powers of observation or his memory. The jury should also be instructed, where the evidence authorizes such instruction, that they may consider whether the declarant's account of the occasion was influenced by resentment, and therefore was biased and incomplete.                                    *Judgment reversed.*

Conviction of manslaughter, from Jefferson superior court— Judge Rawlings. November 13, 1908.

Argued January 13,—Decided March 23, 1909.

The homicide occurred at night on a country road near a house where a dancing party had been in progress, and where a quarrel had arisen among some of the male guests, among whom were the accused and the deceased. The testimony was in conflict, and was in some measure confusing. The accused in his statement contended that the deceased with others made a felonious and unprovoked assault upon him with a knife, etc., and that he fired his pistol in self-defense. A witness testified, that he saw the deceased between one and two o'clock on the night he was shot; his whole body was paralyzed, and he seemed to be in a dying condition; and in answer to the witness's question, "What in the world is the matter with you; how came you to

get shot?" he said, "I went out there where them boys was fuss-
ing; to try to stop the fuss; one of them Denton boys shot me."
He died about seven hours later.

The court charged the jury: "One of the contentions of the
State is that they have introduced proof of what is known as
dying declaration. I charge you that dying declarations made
by any person in the article of death, who is conscious of his
condition, as to the cause of his death and the person who killed
him, are admissible in evidence in a prosecution for the homicide.
I charge you further, that if there was a statement made by the
deceased after he was wounded and before he died, and at a time
when he was conscious of his approaching end, his approaching
death, as to the cause of his death and the party who killed, you
may consider such statement along with the other testimony in
the case, in ascertaining what the truth of the transaction is. I
charge you further, that if there was a statement made by the
deceased after he was wounded and before he died, but made at
a time when he was not conscious of his approaching death, that
he made a statement, but when he made it he was not aware that
he would die and was not conscious of his approaching death,
you would not be authorized to consider it at all, but you would
disregard it entirely and look to the other evidence in the case
in making up your verdict."

There was no complaint of the charge as given, but error was
assigned on the refusal of a request to charge (on the same sub-
ject) as follows: "I charge you that great caution is necessary
in the use of this kind of testimony; because, although there may
have been an utter abandonment of all hope of recovery, it may
often happen that the particulars of the violence of which the
deceased has spoken occurred under circumstances of confusion
and surprise, calculated to prevent their being accurately observed.
The consequences also of the violence may occasion an injury to
the mind and an indistinctness of memory as to the particular
transaction. The deceased may have stated his inference from
facts concerning which he may have drawn a wrong conclusion;
or he may have omitted particulars, from not having his attention
called to them. Such evidence is therefore liable to be incom-
plete. He may naturally also be disposed to give a partial ac-
count of the occurrence, although possibly not influenced by

animosity or ill will. From these considerations the law recognizes and declares that dying declarations shall be received and used as testimony with great caution."

*R. L. Gamble,* for plaintiff in error.

*Alfred Herrington,* solicitor-general, *Hines & Jordan,* contra.