## JONES *v.* THE STATE.

1. Motions for continuance are addressed to the sound discretion of the court, and that discretion will not be controlled where not abused.

2. The court did not err in overruling the ground of the motion for a new trial based upon alleged misconduct of the jury in visiting the scene of the homicide.

3. There was no merit in the grounds of the motion based upon the alleged disqualification of a certain juror. Objections to a juror propter defectum must be made before verdict. *Costly* v. *State*, 19 *Ga.* 614; *Gormley* v. *Laramore*, 40 *Ga.* 253; *Hill* v. *State*, 64 *Ga.* 453.

No. 783. NOVEMBER 18, 1918. · REHEARING DENIED DECEMBER 12, 1918.

Indictment for murder. Before Judge Harrell. Mitchell superior court. June 23, 1918.

Jimmie Jones was tried upon an indictment charging him with the murder of Edgar Holton by shooting him with a pistol. The. homicide was alleged to have been committed on December 9, 1916; and on January 10, 1917, at an adjourned term of the superior court the indictment was returned. On January 16, 1917, the case was called for trial, and counsel for the accused stated that they were not ready and submitted a motion for a continuance, as follows: "The application of Jimmie Jones respectfully shows: that he is the defendant named in the foregoing stated case; that Will Vano, alias Willie Vanover, is a material witness for the defendant in said case; that said Willie Vano, alias Willie Vanover, resides in said county of Mitchell, and has been subpœnaed by the defendant aforenamed; that he is absent without the permission, procurement, or consent of the applicant, either directly or indirectly; that applicant does not know the cause of said absence; that he knows of no one who knows; that he has not given his consent to any person to procure the absence of said witness. Applicant does not wish to delay the trial of his case, and is not making this application for the purpose of delay, but to enable him to procure the testimony of said witness, and he expects to have him present at the next term of this court. The said witness if present would testify that he was present and witnessed the killing of Mr. Edgar Holton; but there was but one shot fired; that it was fired by a negro man whose name was unknown to applicant; that it was not fired by defendant; that defendant was not present when same was fired, and in no way participated therein; that the shooting was the culmination of a dispute and fight had between the deceased, Edgar Holton, and said unknown negro over a bottle of whisky, in which fight the deceased, Edgar Holton, threw a bottle at said unknown negro, who in return fired one shot that took the life of the deceased; said witness will swear that but one shot was fired. Defendant is now incarcerated in jail and has been since the killing of deceased, and has used all

possible diligence in making preparation for his trial, and can not safely go to trial without the presence of said Willie Vano, alias Willie Vanover." The affidavit on this motion was traversed, and upon the traverse the State submitted evidence. The case was passed until the morning of January 19, 1917, when the defendant's counsel again announced that they were not ready, renewed the motion for continuance, and filed the following supplementary motion: "And now comes Jimmie Jones, . . and by way of supplement to his original motion for continuance heretofore filed and which he now renews, and says further: that the witness Willie Vano, alias Willie Vanover, he has endeavored to locate and have present at this term of the court; that he has inquired of his counsel, his relatives and his friends, the sheriff, and such others as he has been able to reach as to the whereabouts of said Willie Vano, alias Willie Vanover, and has through them and every other possible means endeavored to apprehend and locate said Willie Vano, alias Willie Vanover, but is unable to find him, and for reasons heretofore urged in his original motion and those herein contained urges the court for a continuance of said case." This was sworn to. The State then supplemented the testimony upon the traverse; and the motion for a continuance was overruled. The trial proceeded, and a verdict of guilty was returned. The defendant made a motion for a new trial, which was overruled.

*B. C. Gardner, E. E. Cox,* and *J. J. Hill,* for plaintiff in error.

*Clifford Walker, attorney-general, R. C. Bell, solicitor-general, F. A. Hooper, M. C. Bennet, Johnson & Warren,* and *B. T. Burson,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. The overruling of the motion for a continuance was not error. These motions, as has been so frequently ruled, are addressed to the sound discretion of the court. Park's Code, § 5724. While in the present case it may appear from the written evidence in the record that the ends of justice would have been better subserved by granting a continuance, the trial judge who passed upon the issue made by the motion and the counter-showing had all the evidence before him, heard witnesses testify orally, and was authorized to reach the conclusion that the ends of justice did not require a continuance. The witness Vano, whose absence was the ground of the motion, was under indictment in the county, and could not

be found when the officers who were sent out to bring him as a witness searched for him. He had been in the chain-gang for some offense, and the judge might well have held that it was not probable that his presence at the trial of the case could be secured. But, as the statute referred to provides, these things were addressed to the sound discretion of the trial court.

2. Another ground of the motion for a new trial was based upon alleged misconduct of the jury after all of the evidence in the case had been submitted and argument by one of the counsel for the State and one for defendant had been made. The misconduct consisted in a visit to the scene of the homicide and discussion of certain physical facts testified to by a witness for the State at the trial, which tended to illustrate the question of the defendant's guilt. The two bailiffs in charge of the jury, Joiner and Campbell, each made an affidavit, in substance, that on Saturday afternoon, after the court had adjourned until the following Monday morning, the jury were out for the purpose of taking some exercise, and they went in a body in the charge of the two bailiffs to the house at which a witness for the State had testified the killing took place; that one of the jury suggested that they go to the house; that some of the jurors walked around in front of the house and around the porch, and saw a buggy track in front of the house, and a discussion took place among the jurors as to whether or not that was the track made by the buggy which the State claimed was standing in front of the house while the horse was tied to the corner of the porch, and a discussion was had as to where the horse was and where it stood at the time the defendant was alleged to have fired the shot which took the life of the deceased; that some of the jurors said: "If the defendant was standing here [pointing to a spot] when he fired the second shot, the bullet would have missed the house, but if here he was standing [pointing to a spot] the bullet would have hit the house;" and that in looking around in front of the house the jurors claimed to have found some bloodstains on the ground right in front of the house where the deceased was said to have fallen after he was shot. Subsequently these two bailiffs made another affidavit in which they deposed that they were not aware of the contents of their former affidavits, denied the material statements of fact in the former affidavits, and deposed that the jury were out walking for exercise, passed casually

by the premises, and when they got near the house it was remarked by one of the deponents, "There is the house where the killing occurred;" that the jury stopped a few minutes in front of the premises and casually viewed the same; that no blood was seen there by the deponent or by any one else so far as deponent knows, nor was anything said there about the buggy tracks, that deponent heard; that none of the jury undertook to examine the premises in any way, nor was anything said about the relative position of the defendant and the deceased, and there was no effort made to discover or learn anything about the case at the house. Two of the jurors made affidavits to the effect, that the jury went in a body, upon the suggestion of some member of the jury, to look at the house where the shooting occurred; that when they arrived at the house some of the jurors walked around in front of the house and around the porch, and a buggy track was found, and a discussion took place among the jurors in regard to the buggy tracks and certain other material facts in the case; deposing substantially as was done by the bailiffs in the affidavits first referred to. These two affidavits of the jurors were tendered in evidence by movant, and, upon motion of the solicitor-general, were excluded. Affidavits were submitted by the State, made by each of the twelve jurors, in which they deposed, that the alleged scene of the killing was casually passed while the jury were out walking for recreation, after the evidence had been closed; that they did not hear anything whatever which had the slightest tendency to bias or prejudice their minds against the defendant, and they were not biased or prejudiced against the defendant by reason of having visited the scene nor by anything that occurred during the visit; and that the jury may have stopped a moment or two to glance at the premises, but no inspection of the premises was made, and no discussion of the facts referred to in the first two affidavits of the bailiffs was had. Some of the affidavits say that the jurors stopped a minute or two, others only a moment. All show that the visit to the premises was casual, and that none of the material facts, such as the buggy tracks and the house and the relative position of the deceased and the defendant, were mentioned or discussed. But subsequently to the making of these affidavits each of the twelve jurors made affidavits in which they deposed, in substance, that while out walking on the Saturday afternoon re-

ferred to, some one remarked that the house which they were passing was the one where the killing occurred; they went to the premises, where some examination of the premises was made; something was said about the buggy tracks in front of the house, and an inspection of the grounds about the house was made. In several of the last affidavits the deponents expressly withdrew the statement they had made in the first set of affidavits, tending to uphold the verdict. All of the last affidavits which tended to impeach the verdict and contradicted the statements made in the previous affidavits to the effect that the visit was merely casual, in passing by, were disallowed by the court.

The court did not err in disallowing the affidavits of the jurors tending to impeach their verdict. And with the impeaching affidavits of the jurors excluded, and the first affidavits made by the bailiffs in charge of the jury contradicted by later affidavits furnished by the bailiffs themselves, there was no error in overruling the motion based upon the ground of the misconduct of the jurors. The court was authorized to find, under the evidenced contained in the affidavits, that the jury casually passed the premises where the homicide occurred, and that they paused for only a moment or so; that there was no discussion of any of the material facts involved in the killing, and no observation of any material facts further than the location of the house, about which there was some testimony. We do not think that there was such a view of the premises had by the jury, and consideration of the material facts. as required the court to hold that the verdict was vitiated by what the jury observed at the scene of the homicide. If the jury had actually observed and discussed the location of certain buggy tracks and the relative position of the decedent and the accused, and other facts mentioned in some of the affidavits, the verdict should have been set aside. But it was within the province of the court to pass upon the truth of the allegations of misconduct on the part of the jury. He had the right to believe the statements made in the affidavits of the jurors tending to uphold their verdict, and it was proper to exclude the affidavits subsequently made to impeach their verdict. Citation of authorities to uphold this ruling is unnecessary, as this has been more than once ruled by this court.

3. The third headnote requires no elaboration.

*Judgment affirmed. All the Justices concur.*