## PHILLIPS *v.* THE STATE.

1. The ground of the motion for new trial based on newly discovered evidence shows that the evidence is merely cumulative in character, and will not cause a reversal.
2. "It is not, in order to render dying declarations admissible in evidence upon a trial for murder, essential for the State to show that the declarant affirmatively said he was in a dying condition, or used language of like import. If he was in fact in articulo mortis and the circumstances were such as to indicate that he must have known that this was so, it is proper to allow the declarations to be proved and instruct the jury to determine for themselves whether or not the statements made by the deceased were 'conscious utterances in the apprehension of immediate prospect of death'."
3. In view of the court's charge on the law of justification, as set out in the third division of the opinion, it was not error for the court to fail to state the contentions of the defendant more in detail.
4. The evidence authorized the verdict, and the judge did not err in refusing a new trial.

No. 5416. OCTOBER 13, 1926.

Murder. Before Judge Stark. Jackson superior court. March 27, 1926.

*Shackelford, Shackelford & Davis,* for plaintiff in error.

*George M. Napier, attorney-general, Pemberton Cooley, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HILL, J. Lonnie Phillips was indicted for the murder of Fred Craft. The jury returned a verdict of guilty, with a recommendation to the mercy of the court; whereupon the defendant was sentenced to the penitentiary for life. A motion for new trial was overruled, and he excepted.

1. The first and second special grounds of the motion relate to

---

Criminal Law, 16 C. J. p. 1063, n. 85; p. 1199, n. 56.
Homicide, 30 C. J. p. 265, n. 43; p. 312, n. 42.

newly discovered evidence, and were argued, and will be treated here, together. The evidence as set out in the first ground is by Dr. E. M. McDonald, to the effect that he was called on to make an examination of Lonnie Phillips, in Jackson County jail, on March 12, 1926, and that upon examination he found a place on Phillips' jaw that indicated that it might have some foreign substance in it, and upon cutting into his jaw he found the foreign substance to be a number 6 or 7 gunshot. He did not know how or when they were shot into the face. The evidence set out in the second ground was by J. R. Culpepper, who deposed that he lived in the edge of the town of Jefferson on the road leading toward Athens from Jefferson, not over a mile from the house occupied by Hollis Shields, a negro at whose house the killing occurred; that on or about January 27, 1926, on the night that Fred Craft was shot by Lonnie Phillips, he was awake, had got up about one o'clock, and had not gone back to sleep, when about two o'clock he heard some shooting in the direction of Hollis Shields' house; that the first shot he heard was believed by him to be a shotgun, and immediately following this shot he heard a pistol shoot about four times. The newly discovered evidence is merely cumulative of other evidence which was introduced by the defendant on the trial of the case; and under repeated rulings of this court such evidence is not cause for the grant of a new trial. Besides, the evidence is not of such a character as would probably produce a different result upon another trial.

2. Grounds 3, 4, 5, and 6 all relate to dying declarations, the admissibility of such declarations, and the charge of the court upon dying declarations. From the grounds of the motion for new trial it appears that Dr. E. M. McDonald as a witness was interrogated by the solicitor-general as follows: "Q. What was Fred's condition when you first saw him at your house? A. Very serious. Q. What, if anything, did he say?" Counsel for movant objected to the question and answer, on the ground that no sufficient foundation had been laid for the admission of a dying declaration. Thereupon the court said to the solicitor-general: "You might go a little more into his condition." "Q. What do you mean by his condition being serious? A. I told Fred his condition was very serious and it might produce death, and asked him to make a statement. Q. That's all that [you] said to him?

A. Yes, that's about all I said to him. By the court: How did he seem to realize his condition? A. He realized he was in a very serious condition." Counsel for movant then renewed his objection to the admission of the testimony, stating that it had not been shown that Fred Craft knew that he was going to die. The court allowed the question to be answered by the witness. Objection is made that no legal ground was laid for the admission of dying declarations, the witness having previously testified that the deceased did not die until the next day at 11 o'clock a. m., more than thirty-three hours thereafter, and therefore it was insisted that the deceased could not have been in the article of death, nor that he was conscious that he was in a dying condition. The court charged, with reference to dying declarations: "Dying declarations, when the jury are satisfied that there are such, are founded on the necessity of the case, and the reason that being made in the view of impending death and judgment, when the hope of life is extinct, and when the retributions of eternity are at hand, [they] stand on the same plane of solemnity as statements under oath." Error is assigned upon this charge, for the alleged reason that it gave undue and exaggerated emphasis to dying declarations, and because the court failed to instruct the jury on the credibility of such dying declarations, and that they might discredit the statement attributed to the deceased, or to reject them as unworthy of credit because they were made in a spirit of revenge, or because the deceased was either unable to state the fact or was unwilling to do so; and for the further reason that the court should have instructed the jury that they should reject such statement of the deceased if they found, upon consideration of the evidence, that it was not made in the article of death and when decedent was conscious of this fact.

Under the principle ruled in the case of *Young* v. *State,* 114 *Ga.* 849 (2) (40 S. E. 1000), we are of the opinion that there was no error in admitting the dying declarations, nor in the charge to which exception is taken. In the *Young* case this court held: "It is not, in order to render dying declarations admissible in evidence upon a trial for murder, essential for the State to show that the declarant affirmatively said he was in a dying condition, or use language of like import. If he was in fact in articulo mortis and the circumstances were such as to indicate that he must have

known that this was so, it is proper to allow the declarations to be proved, and instruct the jury to determine for themselves whether or not the statements made by the deceased were 'conscious utterances in the apprehension and immediate prospect of death.'" The *Young* case was cited with approval in *Thompson* v. *State,* 153 *Ga.* 146 (111 S. E. 651); and also in the later case of *Green* v. *State,* 154 *Ga.* 117 (6), 137 (113 S. E. 536), where it was said by Mr. Justice Hines that "If the deceased was in fact in the article of death and the circumstances indicated that he must have known it, it is proper to allow declarations to be proved, with instructions that the jury find whether made consciously in articulo mortis."

At the conclusion of the testimony of Dr. McDonald, counsel for defendant moved that the court rule out all of his testimony on the subject of a dying declaration, on the ground that it was not in fact under the law a dying declaration, for the reason that it was not made in the article of death, and the deceased was not shown to be conscious that he was in a dying condition. The court refused to rule out the testimony, stating that he would "properly handle the subject" in his charge. The evidence which counsel asked to be ruled out was as follows: "Fred's condition was very serious. I told Fred his condition was very serious and it might produce death, and asked him to make a statement. Yes, that's about all I said to him. He realized he was in a very serious condition. I told him that I could not tell exactly what his condition was until I got on the inside, but I told him those shots in the abdomen are always very serious, and I asked him to state how it happened, and he told me that about 2:00 or 2:30, after he came out of the house, that Lonnie came out and asked him to carry him home, and he told him, 'I haven't got enough gas, and I can't carry you home,' and he said he wasn't mad with Lonnie and as far as he knew Lonnie wasn't mad with him, and he just pulled out his pistol and shot him, and when he did he just turned to one side and threw up his hand to protect himself." We are of the opinion that the court did not err in admitting the testimony, nor in giving the charge complained of. Nor was it error to fail to instruct the jury on the credibility of such dying declarations, and that they might discredit the statements attributed to the deceased, or reject them as unworthy of credit be-

cause they were made in a spirit of revenge, or because the deceased was either unable to state the facts or was unwilling to do so.

3.   Complaint is made because the court neglected to state to the jury what Lonnie Phillips claimed as his defense.   It is insisted that he stated that he shot in self-defense and only after he had been fired upon and shot with a shotgun, and after Fred Craft had attempted to cut him with a knife; and that this omission to charge was harmful to the defendant, for the reason that it impressed the jury that the court gave no credence to this contention and defense.   The court on this branch of the case charged the jury as follows:   "Now, gentlemen, on the subject of justifiable homicide, the court instructs you as follows: if you believe the defendant, Phillips, did kill the person named in the indictment, Craft, but if you should further believe that at the time he killed him the deceased, Craft, was committing a felonious assault upon the person of this defendant, Phillips, or if you should believe that the deceased, Craft, intended or endeavored by violence or surprise to commit a felonious assault upon the person of this defendant, Phillips, or if you should believe that the circumstances surrounding the killing were such as to excite the fears of a reasonable man that the deceased, Craft, intended or endeavored or was about to commit a felonious assault upon the person of this defendant, Phillips, and that acting under the influence of those fears, and not in a spirit of revenge, this defendant shot and killed Craft, then in that event the killing would be justifiable, and you could not convict the defendant of any offense at all.   Gentlemen, the standard of law is the fear of a reasonable man; it is not necessary that a felonious assault should actually have been committed upon the person of the defendant, Phillips, neither is it necessary that the deceased, Craft, should actually have intended to commit a felonious assault upon the person of the defendant.   If the circumstances surrounding the killing were such as to excite the fears of a reasonable man that a felonious assault was intended, or was about to be committed upon the person of the defendant, Phillips, and acting under the influence of such fears, and not in a spirit of revenge, the defendant killed the person named in the indictment, Craft, then in that event the killing would be justifiable."   In view of this charge, we are of the opinion that there was no error in the failure of the judge to set out

more in detail the contentions of the defendant on the question of justification. If the defendant desired a fuller statement by the court as to what his contentions were on this subject, a timely request therefor should have been made.

4. The verdict was authorized by the evidence. Herbert Craft testified for the State: "Fred Craft is my brother; he is dead. I saw Fred about January 27, down at Hollis Shields' to a party. Hollis lives with Mr. Claud Hancock in Jefferson. Fred came over there to Jefferson to Dr. McDonald's, cause he was shot. Lonnie Phillips shot him. I was standing in front of the car, and Fred was standing down side of the car near the door; it was a Ford. There was nothing passed between them before Lonnie shot him; he shot him cause Fred would not bring him to town. Lonnie asked Fred to carry him to town, and Fred said he didn't have enough gas, and 'you are drunk, and I don't want to go to Jefferson with you.' Lonnie said he was acting a —— —— ——, and shot him and run. Fred gave way and fell to the ground. Clint Bailey, Garland Griffeth, Grady Shields, and me and Fred was there, and it was after 2 o'clock. Fred was fixing to go home, and I brought him to the doctor with Clint Bailey and Garland Griffeth. . . Fred didn't do nothing. Lonnie was drunk. Fred was sober. I don't know of any fuss Lonnie and Fred had prior to this. Fred was shot in the left side with a pistol. Lonnie went towards Jefferson after he shot; he didn't shoot again until he was about ten steps away. This was in Jackson County. Fred lived about a day and a half." Other eye-witnesses for the State testified to substantially the same facts as just related. Dr. McDonald testified that he was a physician and knew Fred Craft, and saw him first at his home and then at his office about 2:30 o'clock in the morning. "Fred was shot in the left side and ranged across; he was shot one time; it produced death; this was about 2:30 in the morning, and he died next morning about 11:00 o'clock; this bullet wound in the abdomen caused his death. Yes, we operated; we didn't know what we would find in there until we operated; we made an incision just a little to the left of the median line and after we got in we found nine holes in the bowels that the bullet had perforated; when I first saw him his condition was serious; I told Fred his condition was very serious and it might produce death, and asked him

2

to make a statement; he realized he was in a serious condition; that was about 2:30 in the morning. I told him that I could not tell exactly what his condition was until we got on the inside, but I told him those shots in the abdomen are always serious and asked him to state how it happened, and he told me. . ." The rest of this testimony is set out in the second division of the opinion.

While there is evidence for the defendant from which the jury might have inferred that the defendant was justified in shooting the deceased, yet there is sufficient evidence on behalf of the State, as set out above, to authorize the jury to find the verdict which they did find; and the trial judge being satisfied therewith, his judgment in refusing a new trial will not be disturbed.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent from the ruling in the first headnote.*