## MORAKES *v.* THE STATE.

No. 15497.   SEPTEMBER 6, 1946.   REHEARING DENIED OCTOBER 11, 1946.

*James W. Arnold* and *Howard, Camp & Tiller,* for plaintiff in error.

*Eugene Cook, Attorney-General, C. S. Baldwin Jr., Solicitor-General,* and *C. E. Gregory Jr., Assistant Attorney-General,* contra.

HEAD, Justice. (After stating the foregoing facts.) ■ In special ground 4, the movant shows that the Sheriff of Morgan County, George Saye, was named prosecutor in the bill of indictment returned against him, and on the trial of the case testified on behalf of the State against the movant. He states that such sheriff served as sheriff during the trial, appointed the bailiffs who attended the jury, and personally summoned a number of the jurors who were selected as triors of the defendant. He contends that, because such sheriff was prosecutor in the case, he was disqualified to perform the acts mentioned as sheriff, and that the court erred in permitting such sheriff to participate in the trial and to perform these acts.

Special ground 5 is almost identical, except that the action of the sheriff objected to is that he participated in the trial of the case by assisting the solicitor-general in striking the jury. In this ground it is stated that the acts of the sheriff complained of were committed in open court.

In special ground 6 it is stated that named persons were sworn and served as bailiffs, all of whom were selected by the sheriff. That such bailiffs served subpoenas upon the jurors who were selected to try defendant, and some of the bailiffs waited upon the jury after it was impaneled. It is contended that such bailiffs were disqualified to serve since they were selected and appointed by the sheriff, who was disqualified.

The same assignment of error is made in each of the grounds,

that the court committed error in allowing the sheriff to perform the acts complained of, and that the effect of such acts was to deny the movant a legal trial and to deprive him of his life or liberty without due process of law, in violation of art. 1, sec. 1, par. 3 of the Constitution of Georgia, and in violation of the Fifth Amendment to the Constitution of the United States. Since the three grounds all deal with the disqualification of the sheriff, they will be considered together.

In the certificate by the trial judge it is stated in regard to these grounds: "No objection was made by the defendant, or his counsel, during the course of the trial, nor was any ruling of the court invoked, in relation to the matters set forth in said special grounds, four, five and six."

In the counter-showing by the State in connection with these grounds, the affidavit of George Saye, sheriff, was introduced, in which he stated that he was nominal prosecutor only, having sworn out the warrant for the accused as a matter of expediency to have something with which to hold him, that he had no interest whatever in the case, that each juror from the time he was selected was placed in charge of the jury bailiff, who was a court bailiff, selected by the court, and that the deponent during the trial of the case had no communication with any member of the jury.

In regard to the action of the sheriff in summoning members of the jury, and in selecting bailiffs who served subpœnas upon the jury, if the sheriff was disqualified as alleged, then objection should have been made in the nature of a challenge to the array of jurors. Code, § 59-803. Since any irregularity in summoning the jury was known or could have been known before the trial, and no challenge was made to the array, such irregularity would not constitute a valid ground of a motion for new trial. *Dover* v. *State*, 109 *Ga.* 485 (34 S. E. 1030).

If, as contended, it was improper for the sheriff to assist the solicitor-general in the selection of the jury to try the defendant, by proper objection a ruling of the court could have been invoked, which, if adverse to the defendant, might have been made a ground of a motion for new trial. Such question can not be made for the first time on the motion for new trial.

In special ground 6, it is contended that the sheriff selected the bailiffs who attended the jury. While we agree with the defendant

that jury trials, especially in criminal cases, should be absolutely free from any suspicion of wrongdoing or misconduct on the part of officers of the court, we do not think that counsel can stand idly by and see an alleged disqualified officer appoint bailiffs to attend the jury, make no objection thereto, and then take advantage of the irregularity on a motion for new trial.

Since it is apparent that all of the acts complained of in these grounds were known or could have been known by the defendant or his counsel prior to or during the trial, and no objections were made, it is now too late to urge that a new trial be granted because of them.

It is, of course, well settled that a sheriff may be disqualified to perform his ordinary duties. See the Code, § 21-106. "An officer is not qualified to act in summoning a jury if he is a party to the action, a relative, or an attorney of one of the parties, a relative of deceased in a homicide case, or if he is interested in the event of the action, although not a party of record." 35 C. J. 276, § 240. There is an indication in the early case of *Phillips* v. *State,* 29 *Ga.* 107, that the fact that the sheriff is prosecutor would be ground of challenge to the array of jurors. In *Griffin* v. *State,* 5 *Ga. App.* 43 (62 S. E. 685), it was held that the sheriff who was the prosecutor could not properly be put in charge of the jury. However, in *Powell* v. *State,* 27 *Ga. App.* 315 (108 S. E. 245), it was held that the challenge to the array of jurors, upon the ground that the sheriff's name appeared on the indictment as prosecutor, is without merit, since it did not appear that the sheriff, who performed the mere ministerial act of summoning the jury, had more than a nominal interest in appearing as prosecutor in the indictment. Also, in regard to the disqualification of a sheriff, see *Harris* v. *State,* 191 *Ga.* 248 (12 S. E. 2d, 64).

■ Ground 7 states that the selection of the jury to try the defendant was not completed on the day the trial was commenced, but after nine men had been selected and impaneled, the court took a recess until the following day. The nine jurors were placed in charge of Grady Denney, one of the bailiffs selected to wait upon the jury. The bailiff took the nine jurors to a tourist camp near the City of Madison, where the sheriff had made arrangements for them to spend the night. The jurors did not all occupy the same building, but were separated and placed in four different cabins in

the tourist camp, there being no connection between any of the cabins. The bailiff did not occupy any of the cabins in which the jurors were placed, but occupied a separate cabin, and did not see or communicate with the jurors after they went to their cabins until the following morning.

The defendant contends that it was the duty of the bailiff not to permit the separation of the jurors, but to keep all of them together and to remain with them until the completion of the trial, and that by reason of the facts set forth he was denied a legal trial in violation of art. 1, sec. 1, par. 3 of the Constitution of the State of Georgia. The defendant further contends that neither he nor his counsel had knowledge of the separation of the jury, and affidavits of the defendant and his counsel are attached in verification of this contention.

On the hearing of the motion for new trial, the State introduced the affidavit of the sheriff, George Saye, in which he stated that on the night of December 3, when the court was getting a place for the nine jurors to sleep, room could not be found where all of them could stay together, and this fact was announced to counsel for the defendant, and he expressly agreed that they might sleep at Newsome's Tourist Camp in separate cabins, and also that the bailiff be allowed to take them to a moving-picture show. Counsel for the defendant made an affidavit in which he stated that the sheriff was mistaken about his agreeing that the jury might sleep separately in a tourist camp, that he did not know where the jury would sleep, and that he did agree that they might attend a picture show. In the order overruling the motion for new trial, the judge stated that the sheriff announced in open court, in the presence of counsel, that hotel facilities were not available, and that the jury would be housed for the night at Newsome's Tourist Camp; that he gained the impression that the sheriff's statement was heard by the defendant's counsel; and that afterwards counsel were called to the bench and it was agreed that the jury might attend a picture show if they desired.

If counsel consented for the jury to sleep in separate cabins, as contended in the affidavit of George Saye, sheriff, the movant, through his counsel, waived his right to complain of such separation. If announcement was made in open court in the presence of counsel, and no objection to such separation was then made by

counsel, the alleged irregularity was waived and objections can not be made for the first time on a motion for new trial.

Under the evidence submitted, the able trial judge was required to pass upon the conflicts and act as a trior of the issues thus presented. In all such instances the trial judge is vested with a sound discretion, which in no instance will be controlled by this court unless it is made to appear that such judge has abused the discretion vested in him as a matter of law. In both civil and criminal cases this court has repeatedly held that, where the trial judge is required to pass upon conflicting evidence, his findings will not be disturbed unless a plain abuse of discretion appears. See *Jones* v. *State,* 136 *Ga.* 157 (71 S. E. 6); *Marshman* v. *State,* 138 *Ga.* 864 (76 S. E. 572); *Shivers* v. *State,* 181 *Ga.* 562 (4) (183 S. E. 489).

On this ground the trial court was authorized to find, either that counsel consented for the jury to spend the night at Newsome's Tourist Camp, or that announcement was made in open court in the presence of counsel that the jury would spend the night at Newsome's Tourist Camp, and that counsel interposed no objection. It was held in *Carter* v. *State,* 56 *Ga.* 463, *Lyman* v. *State,* 69 *Ga.* 404, and *Kirk* v. *State,* 73 *Ga.* 620, that, where the defendant or his counsel knew of the misconduct of the jury and did not bring it to the attention of the court until after verdict, the misconduct would not be good ground for a new trial. Under the evidence submitted, the trial judge did not abuse his discretion in overruling this ground of the motion for new trial.

■ Ground 8 states: That by consent of counsel for the· State and the defendant, the nine jurors were permitted by the court to attend a moving-picture show in a body, accompanied by the bailiff. After returning therefrom, the bailiff accompanied the jurors to the place where they were to spend the night, and before they went to the cottages where they were to sleep they were permitted to go into a store at a nearby filling station, where they remained a short time, and where other persons, members of the general public, and the employees of the store were present. Some of the jurors engaged in conversation with persons who were not members of the jury. When the jurors were preparing to go to their various cottages, Rufus Newsome accompanied some of them to the cottages, and turned on the lights and heat for them, this taking place outside

the presence of the bailiff, who had gone to his room in another cottage.

The affidavit of Grady Denney, bailiff, is attached, the material part of which is as follows: "Affiant took said jury to said tourist camp, and upon arrival there, affiant together with the nine jurors went into a small store operated by Mr. and Mrs. Newsome in connection with the tourist camp; that some members of the jury while in the store purchased soft drinks and maybe bought something to smoke, affiant is not certain about this, but affiant says that the jury only remained in said store for a short time, and that there was in the store during the time some people, affiant does not remember who they were or how many. Affiant says that the jury then retired to its sleeping quarters, which consisted of four different tourist cabins, and that Mr. Newsome, the proprietor of said camp, accompanied said jury to their respective rooms and went into the room with the jurors who slept in each cabin and showed them how to operate the heat and lights. Affiant then went to a separate cabin where he spent the night and did not see the jury or communicate with them any more during the night and until the next morning, when affiant assembled the jury together and escorted them back to the courthouse. That said jury did sleep separate and apart in different cabins in said tourist camp."

The affidavit of Rufus Newsome is attached, the material part of which is as follows: "That upon arrival at the camp, the jury with the said bailiff came into the store operated by affiant, and some members of the jury bought some soft drinks; that there were present in the store at that time some members of the public, affiant does not now remember who they were, except that he does remember that Mr. Tom Wood was there; that during the time that said jury was in affiant's store there was the usual general conversation, some jokes and laughing, but affiant is certain that the case on trial was not mentioned in any way, and if there was, affiant did not hear it. Affiant says that at the request of the jury or Mr. Denney, affiant does not remember which, that affiant accompanied the jury to the various cabins wherein the jury slept, and went into the cabin with the jurors that were to sleep in that particular cabin, and in fact went into each and every cabin wherein the various jurors slept with the jurors that slept in that particular cabin, and showed them how to operate the heat and lights."

The defendant contends that the effect of the bailiff's conduct in permitting the jurors to mingle with the general public in the store and to engage in conversation with them, and to allow Newsome to accompany the jurors to their cottages, was to deprive him of a legal trial; and that such conduct was harmful and prejudicial to him, in that it violated the public policy of this State which requires that in the trial of every felony case the jurors shall be kept together and shall not be permitted to come in contact with or mingle with other persons not members of the jury. The defendant asserts that neither he nor counsel representing him knew of the facts set forth in the ground until after the verdict in the case was rendered, and attaches affidavits by his counsel and himself in support of this assertion.

On the hearing of the motion for new trial, the State made a counter-showing by introducing affidavits of the nine jurors, in which they each deposed that, while they were separated and while they were in the store, no one mentioned the case to them and they did not discuss it with any one, and nothing happened to influence them in reaching the verdict which they later reached.

Where members of a jury are allowed to disperse, or misconduct of a jury is shown, the presumption arises that the defendant on trial in a criminal case has been injured by such conduct, and the burden is on the State to overcome such presumption. In this case nine members of the jury who tried the defendant were selected at the time court adjourned for the day. By agreement of counsel for the State and the defendant, the jury were permitted to attend a picture show. After the show they were taken by the bailiff in charge of the jury to Newsome's Tourist Camp where they were to spend the night. Before retiring to their cabins they were accompanied by the bailiff into a small store operated by Rufus Newsome, the owner of the tourist camp, where there were members of the general public. Members of the jury purchased soft drinks and something to smoke. The bailiff in charge of the jury was at all times present.

The affidavit of the bailiff, Grady Denney, does not state that the case was not discussed in the store by members of the jury with the general public, nor does it state that it was not discussed by members of the general public in the presence of the jury. However, there is also attached to this ground the affidavit of Rufus New-

some, the proprietor of the tourist camp, to the effect that "during the time that said jury was in affiant's store there was the usual general conversation, some jokes and laughing, but affiant is certain that the case on trial was not mentioned in any way, and if there was, affiant did not hear it."

The nine members of the jury made identical affidavits, in which they state that the case was not discussed by them with anyone, and that nothing happened to influence their minds in reaching the verdict later made. The jury could not say in their affidavits that the case had been discussed in their presence by members of the general public, since such affidavits, if made, would in effect impeach their own verdict. Therefore, no inference can properly be drawn that the case was discussed in their presence by reason of their failure so to state. To allow such inference would be to allow the jurors to do by indirection that which they could not do directly, namely, impeach their verdict. The Code, § 110-109, provides: "The affidavits of jurors may be taken to sustain but not to impeach their verdict." In *Jones* v. *State,* 148 *Ga.* 587 (97 S. E. 621), this court held that the trial court properly excluded affidavits by members of the jury, on the motion of the solicitor-general, where such affidavits, if admitted in evidence, would have the effect of impeaching the jury's verdict. It has been repeatedly held by this court that a juror in neither a civil nor a criminal case can make an affidavit to impeach the verdict.

In this case no actual injury is charged or shown; so the only question is whether the judge was authorized to find that the *presumption* of injury was overcome. We think that the court was authorized to find, on the showing made by the movant and the counter-showing made by the State, that the presumption of injury to the defendant was overcome by the affidavits of the members of the jury and the affidavit of Rufus Newsome, the operator of the tourist camp.

In *Roberts* v. *State,* 14 *Ga.* 8 (58 Am. D. 528), it was held: "Where a jury after being sworn to try a prisoner (the judge having for a short time left the courtroom), by inadvertence separate, pass out of the courthouse through a group of bystanders, and the court after returning and discovering their absence, by a careful examination (in part of the jurors on oath) satisfies himself that they have had no intercourse with any one, improper or injurious

to the prisoner, and so announces: *Held,* after conviction, that the Court was right in not disturbing the verdict on this account."

In *Doyal* v. *State,* 70 *Ga.* 135, it was held that, where a person entered a courtroom in which a jury was in charge of a bailiff, and addressed some remarks to the jury about matters other than the case on trial, and where the bailiff slept in the same room with the jury but did not discuss the case with them, and where the jury in going to meals were at all times attended by the bailiff, and saw no one other than the persons serving the meals, such misconduct was not shown as would require the grant of a new trial. In this. connection, see also: *Spier* v. *State,* 89 *Ga.* 737 (15 S. E. 633); *Robinson* v. *State,* 109 *Ga.* 506 (7) (34 S. E. 1017); *Jones* v. *State,* 135 *Ga.* 357 (2) (69 S. E. 527); *Fitzpatrick* v. *State,* 149 *Ga.* 76 (6) (99 S. E. 128); *Peavey* v. *State,* 153 *Ga.* 120 (111 S. E. 420).

It was not error to overrule this ground of the motion for new trial.

■ In ground 9, the movant contends that the court erred in admitting in evidence the testimony of A. Felton Jenkins, a witness for the State, with reference to an alleged dying declaration of Fred Adams, the deceased. The testimony of the witness was as follows: "I have an opinion as to whether he was in a dying condition when I went in, basing my opinion on observing his wounds and the fact that he died 24 hours later. My opinion is he was in a dying condition when I talked to him. He was conscious when I talked to him. I asked him, 'Fred, do you realize your condition?' He said, 'Yes, I realize my condition.' He was in mortal pain, because I could see him writhing and I could see where the bullets went in and I could hear him groaning and praying, calling on his Helper, calling on God to help him. I told him I wanted him to make a statement, which he did and we wrote it down and I have it here. Refreshing my recollection from this paper, I remember what Mr. Adams said. He said: 'I realize my condition. I was going down the street. I saw Nick [the defendant] and he recognized me, and he began to tear open his shirt and pulled out a gun. I realized what was about to happen. I had no idea of arresting him and I had done nothing towards him.'" At the time the testimony was offered, counsel for the movant objected to its admission in evidence upon the ground that it purported to be a dying declaration of the deceased, and the State had not laid

the proper foundation, counsel contending that the evidence constituted an opinion on the part of the witness, and did not contain any statement by the deceased to the effect that he was conscious that he was in the article of death at the time the declaration was made. In connection with this ground, the movant sets out the testimony of Dr. W. C. McGeary, a witness for the defendant, who testified that the deceased kept asking him if he would get well, and that he assured him that he would, and that the deceased was hopeful up until the last.

The movant contends that the testimony of Jenkins in regard to alleged dying declarations of the deceased was extremely harmful and prejudicial to him, because it permitted the jury to consider testimony which was legally inadmissible, and because there was evidence that the defendant and the deceased were engaged in mutual combat, and the deceased fired six shots at the defendant, and there was likelihood that the deceased in making the statement giving his version of the shooting would have been guided by a feeling of resentment toward the movant; and the jury should not have been permitted to consider any statement made by him unless there was evidence to show that he was actually in the article of death at the time the statement was made, and conscious of this fact.

"A prima facie case is all that is necessary to carry dying declarations to the jury. When this has been made out, the declarations are admitted, and the ultimate determination as to whether or not the person making them was in articulo mortis and realized that death was impending is for the jury." *Findley* v. *State,* 125 *Ga.* 579 (54 S. E. 106). It is not necessary that the testimony introduced as dying declarations contain any statement by the deceased to the effect that he was conscious of impending death at the time the declarations were made, since this may be inferred from the nature of the wounds and other circumstances. *Dumas* v. *State,* 62 *Ga.* 58 (2) ; *Jefferson* v. *State,* 137 *Ga.* 382 (3) (73 S. E. 499) ; *Jones* v. *State,* 150 *Ga.* 775 (105 S. E. 495) ; *Phillips* v. *State,* 163 *Ga.* 12 (135 S. E. 421).

The witness, in giving his opinion that the deceased was in a dying condition at the time the statements were made, gave the facts upon which he based his opinion, his observation of the wounds, and the fact that the deceased died 24 hours later. He also detailed the fact that the deceased was in mortal pain, and was praying.

While the evidence of Dr. McGeary, quoted by the defendant, made an issue of fact for the jury as to whether or not the deceased knew that he was in a dying condition, it did not render erroneous the previous admission in evidence of the dying declarations. There is no indication that, after Dr. McGeary's testimony, the defendant's counsel made any motion that the dying declarations be excluded from the evidence, and since the declarations were prima facie admissible, no error was committed in allowing the jury to consider these declarations of the deceased in a consideration of the evidence in the case. *Lowe* v. *State,* 132 *Ga.* 341 (63 S. E. 1114).

■ Ground 10 complains of the charge of the court in regard to dying declarations, the assignment of error being that it was not adapted to or authorized by the evidence in the case. The charge correctly presented to the jury the questions that they must decide about the statements alleged to be dying declarations—that is, whether such declarations were made by the deceased; whether the deceased at the time of making the declarations was in the article of death; and if in the article of death, whether he was conscious of that condition. The charge was adapted to the evidence, and was not subject to the assignment of error made.

Ground 11 sets out the same portion of the charge, and contends that if, under the evidence in the case, a charge on the principle of law dealing with dying declarations was authorized, the charge as given was erroneous because the court should have further instructed the jury that caution should be observed by them in considering the testimony with reference to the alleged dying declarations, and should have further instructed them that, although they might be satisfied that the alleged statements were made by the deceased while in the article of death and conscious of that condition, yet in determining their probative value the circumstances under which the statements were made might be considered by the jury with a view as to whether the physical condition of the declarant or the circumstances surrounding the shooting were calculated to impair his powers of observation or his memory, and whether his account of the occasion was influenced by resentment, and therefore was biased and incomplete. The movant shows, in this connection, that there was evidence of mutual combat between the defendant and the deceased, and that there was testimony from which

the jury would have been authorized to find that immediately after the shooting the deceased felt strong resentment against the defendant.

In support of the contentions made in this ground, counsel for the movant rely upon *Denton* v. *State,* 6 *Ga. App.* 3 (63 S. E. 1132). In the *Denton* case the Court of Appeals held that it was error requiring the grant of a new trial not to inform the jury that caution should be observed in the use of evidence tending to show dying declarations, and to fail to give other instructions which are in substantially the same language as that which the movant claims in this ground the court should have given in charge to the jury in the present case. The ruling made by the Court of Appeals in *Denton* v. *State,* supra, was based on the failure of the court to charge where a written request was duly submitted. In the present case, counsel made no written request to the court to charge in language similar to that used in the *Denton* case.

The only decision by this court which we have been able to find that even tends to support the position of counsel for the plaintiff in error is *Coart* v. *State,* 156 *Ga.* 537 (3) (119 S. E. 723). It appears, however, that whatever statement was there made by the court with reference to the necessity for instructions to the jury that statements attributed to the deceased should be received and considered with great caution, was not actually involved in the *Coart* case. There was no request to charge, and it appears from an examination of the record on file in this court that the trial judge actually charged that evidence of dying declarations should be received with the utmost caution. In that case there was a special concurrence by four Justices, indicating that only the judgment was approved, and not the rulings stated therein.

In *Williams* v. *State,* 148 *Ga.* 483 (3) (97 S. E. 77), this court held: "The court did not err in failing to charge that 'dying declarations should be received with great caution, and the bias, the feeling, and the physical and mental condition of the declarant, as well as the credibility of the alleged declaration, should be weighed by them,' even if this charge was such as the court would have been required to give had there been a written request therefor." The *Williams* case was a full-bench decision and is controlling over any contrary obiter in *Coart* v. *State,* supra. In *Key* v. *State,* 177 *Ga.* 329 (170 S. E. 230), it was held: "The failure of the court to

give, in addition to other instructions upon the subject of dying declarations, the further instruction that the dying declaration must be received with caution, is not reversible error."

In *Phillips* v. *State,* 163 *Ga.* 15 (135 S. E. 421), it was held: "Nor was it error to fail to instruct the jury on the credibility of such dying declarations, and that they might discredit the statements attributed to the deceased, or reject them as unworthy of credit because they were made in a spirit of revenge, or because the deceased was either unable to state the facts or was unwilling to do so." This court held in *Wallace* v. *State,* 175 *Ga.* 429 (165 S. E. 432) that it was not error, in the absence of a written request, to fail to elaborate in the charge on the subject of dying declarations, upon contentions similar to those presented in this ground.

In the present case, as was said in *Parker* v. *State,* 197 *Ga.* 340 (29 S. E. 2d, 61), the court gave in charge the Code, § 38-307, as to dying declarations and instructed the jury generally as to their function in considering evidence of such declarations, and we think that, if a more elaborate charge was desired, counsel should have submitted a proper request therefor in writing. There is no merit in this ground.

*Judgment affirmed. All the Justices concur, except Duckworth, Wyatt, and Head, JJ., who dissent.*

HEAD, J., dissenting. The rulings in divisions 3 and 4 (as to special grounds 7 and 8) were stated by me for the majority of the court. I dissent from the rulings there made and from the judgment of affirmance.

In all criminal trials great care should be exercised to preserve to the accused his constitutional right of an impartial jury and a fair trial. The provision of our Constitution, that "No person shall be deprived of life, liberty, or property, except by due process of law," is more than the mere grouping of inanimate words. It is a living, positive, and continuous guaranty upon which the rights of the citizen and our way of life must rest. "Due process" is law in its regular course of administration through courts of justice, or the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights.

As shown by the oath required of bailiffs attending a trial jury

(Code, § 59-717), due process requires that, when a juror enters upon the trial of a criminal case, such juror shall be absolutely withdrawn from society. No provision is made for communication by such juror with outside sources or influences. From the time of his selection until he is discharged from any further consideration of the case, by reason of verdict, mistrial, or otherwise, such juror is not to be subjected to contacts which might affect his impartiality as a juror.

Denial of due process is not that slight or trivial variation from established rules, which can not possibly injure the accused. Due process is denied where there has been a positive violation of a sworn duty by an officer of the court in charge of the jury, resulting in a legal presumption that the accused was injured, and where such presumption is not overcome by proper proof. This court is in full accord on the rule that, "Where misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and the onus is upon the State to remove such presumption by proper proof." *Shaw* v. *State,* 83 *Ga.* 92 (9 S. E. 768). In this case I disagree with the majority of the court as to the State having overcome the presumption of injury by proper proof.

It is not material to a proper judgment here whether counsel for the accused may, or may not, have known that the jury would spend the night at Newsome's Tourist Camp. Concede that counsel did in fact have such knowledge. There is no evidence by any person, nor can any inference be adduced from any evidence, that counsel knew, or could have known, that the bailiff in charge of the jury would permit them, when they were ready to retire, to be, in effect, taken in custody by Rufus Newsome, who was not an officer of the court, but was the operator of the tourist camp, and that Newsome, out of the presence of the bailiff, would escort the jury into separate cabins and show them how to "operate the heat and the lights." Nor is there any evidence or inference that counsel knew that the bailiff would retire in a cabin separate and apart from the jury.

Since the deceased was a man of prominence, being the Chief of Police of the City of Madison, and the defendant's trial for the shooting of the deceased had begun, it is entirely probable that persons in the community would be discussing the case. The record does not indicate whether or not persons other than the jurors occupied cabins in the tourist camp near the cabins occupied by the

jurors, or whether the jurors during the night had any opportunity to communicate with members of the general public or overhear remarks made by the public about the case on trial.

It is the opinion of the writer that it was a serious irregularity for the bailiff to allow Newsome, who was not an officer of the court, to enter the cabins with the jurors, outside of the presence of the bailiff. Further, the bailiff should have remained on duty and in close observation of the cabins occupied by the jury. A comfortable bed and a night's sleep are not nearly so essential or vital to the individual and to society as the discharge of that vigilance and duty required of an officer in charge of a jury. Especially may this be said to be true when life or death rests upon the verdict to be rendered.

In *Monroe* v. *State, 5 Ga.* 85, 146, it was said: "That the person accused may have the full benefit of a judgment by his peers, it is absolutely necessary that the minds of the jurors should not have prejudged his case; that no impression should be made to operate on them, except what is derived from the testimony given in court, and that they should continue impartial and unbiased. These objects can only be attained by selecting those who have no preconceived opinions as to the guilt or innocence of the prisoner, and by not permitting them to separate from each other after they have been sworn, and mingle with the balance of the community. . . *It is not necessary for the prisoner to prove that they were, during their absence, subjected to improper influence from others; it is sufficient, if they might have been.* There would be no safety in a different rule of practice; for it would be almost impossible ever to bring direct proof of the fact, that it was done." . (Italics supplied.)

In the present case, the nine jurors selected to try the defendant had not been sworn prior to the occurrences set forth in special grounds 7 and 8. However, they had been found competent to serve as such jurors. They would not again be put on voir dire and required to answer under oath that they had not formed any opinion in regard to the guilt or innocence of the prisoner. Nor would they again be required to state under oath that their minds were perfectly impartial between the State and the accused. Members of the jury selected to try the defendant should remain absolutely impartial, whether or not they had been sworn in the manner

provided by law. Otherwise, if partiality or conduct of the jury is to be measured only from the moment the oath is taken by the jury, why make even a pretense at seclusion of the jury prior to the time the oath is administered? Such question is answered by the established rules of law and procedure governing jury trials, and by a fair application of the fundamental principles of justice upon which trial by jury is based.

In this case, it was not necessary that actual injury be charged or shown by the accused, as might be inferred from the majority opinion. It is sufficient when it is shown that the jury could have been subjected to improper influences. The State relies on identical affidavits by the nine jurors, the material part being as follows: "Deponent says that, while they were separated and while they were in the store and while they were in the picture show, no one mentioned the case to him and he did not discuss it with anyone, and nothing whatever happened to influence him in any way in reaching the verdict which he later reached." Not by any word or inference do I intend to question the honesty of the jurors as to the statement appearing in the affidavit made by each of them to the effect that nothing whatever happened to influence them in reaching the verdict later rendered. But how can a juror determine what particular incident, word, statement, gesture, rule, or principle of law may be involved in inclining his mind to one side of an issue rather than to the other? The statement in regard to nothing happening to influence their verdict, however conscientiously made and honestly believed by the jurors, is a mere conclusion, and does not meet the rule that the presumption of injury must be overcome by proper proof. See *Shaw* v. *State,* supra.

What happened while the jury was in the custody of Newsome out of the presence of the bailiff? The jury does not say, nor do we have any word from Newsome. Did members of the general public make some reference, inference, or statement about the case on trial, or do any act in the store, observed or heard by the jury, that may have influenced them in some degree in their verdict? The record is silent. The jury does say that they did not discuss the case with any one. Why did they not say that it was not discussed in their presence by others? The jury may properly make any truthful statement necessary to sustain, but not to impeach, their verdict. The failure of the jury to state that the case was

not discussed in their presence is a failure to make necessary proof to sustain their verdict.

It was held by this court in *Daniel* v. *State,* 56 *Ga.* 655 : "When the law was violated by the misconduct of the juror, the legal presumption was that the defendant was injured, and it was incumbent on the State to have rebutted that legal presumption, not only by evidence that the juror did not speak to anyone himself, nor did anyone speak to him about the case, *but that he did not hear anyone in the crowd through which he passed express any opinion in relation to the case."* (Italics supplied.) The facts, as stated by the court in the *Daniel* case, were as follows : "One of the grounds of the motion for a new trial is, that one of the jurors, after being charged with the case, was allowed to separate from the jury without being accompanied by any officer, and to go across the street to the storehouse of Jones, in the Town of Warrenton, one hundred yards from the courthouse, and return; that there was a crowd of persons there through which the juror was obliged to pass, and did pass, in going to and returning from said storehouse. The fact of the separation of the juror as alleged, is not denied, but he states in his affidavit that he went to the storehouse to get his overcoat; that he did not speak to any one, and that no one spoke to him about said case; *but the juror fails to state in his affidavit that he did not hear any person or persons in the crowd through which he passed speaking or expressing their opinions about the case."* (Italics supplied.)

In *Suple* v. *State,* 133 *Ga.* 601 (66 S. E. 919), a new trial was denied where only one juror was guilty of misconduct, but the court in that case stated : "It appears that the juror neither discussed *nor heard discussed* the case on trial, or anything relating thereto." (Italics supplied.) But see *Monroe* v. *State,* supra; *Obear* v. *Gray,* 68 *Ga.* 187; *Silvey* v. *State,* 71 *Ga.* 554; *Smith* v. *State,* 122 *Ga.* 154 (50 S. E. 62).

In the present case, we have nine jurors mixing and mingling with members of the general public in a store, engaged in general conversation, and the jurors do not undertake to say that remarks about the case on trial were not made in their presence. The statement contained in the affidavit of Rufus Newsome, that: "Affiant is certain that the case on trial was not mentioned in any way, and if there was, affiant did not hear it," is so negative, and question-

able as to any knowledge of the affiant, that it does not require further consideration here.

In *Glover* v. *State,* 128 *Ga.* 1 (57 S. E. 101), approved in *Barfield* v. *State,* 179 *Ga.* 294 (175 S. E. 582), it was said: "There may be a state of facts where the evidence, under the law, would demand a conviction of the crime of murder; but under our law, where the punishment to be inflicted for murder is left in the discretion of the jury, under no circumstances can this court say that the evidence demanded a general verdict of guilty which must be followed by the infliction of the death penalty." Since a general verdict of guilty, followed by the infliction of the death penalty, is in no case demanded as a matter of law, slight irregularities may have been sufficient to influence the jury in the imposition of the death penalty, and where irregularities are shown and the law raises a presumption of injury to the accused by reason of such irregularities, and where such presumption of injury is not fully overcome by proper proof, the judgment denying the motion for new trial should be reversed. I am authorized to say that Mr. Justice Duckworth and Mr. Justice Wyatt concur in this dissent.