## JONES *v.* THE STATE.

1. The ruling of the court refusing a motion for a mistrial, made by the defendant in a criminal case, is not the subject-matter of direct exception, unless exceptions to the same were made in a pendente-lite bill of exceptions duly filed, or in a direct bill of exceptions tendered within twenty days after the ruling complained of.

2. Where one ground of the motion for a new trial is based upon alleged misconduct of the bailiff in charge of the jury and certain members of the jury during the trial, and it appears from the counter-showing made by the State, in reply to this ground of the motion, that, while there were acts of misconduct on the part of the bailiff and certain members of the jury, the acts referred to in themselves were not hurtful to the accused or prejudicial to his rights, the court does not err in overruling this ground of the motion for a new trial.

3. Where a ground of a motion for a new trial complains of the admission of testimony and sets forth lengthy extracts from the testimony of several witnesses, parts of which testimony were clearly admissible, and no attempt is made to segregate that which was objectionable or specially to point it out, such ground shows no cause for granting a new trial.

4. A ground of a motion for a new trial based upon the admission of testimony is vain unless it shows what objections were urged to the admission of the testimony at the time it was offered and admitted.

5. An assignment of error to the judgment overruling a motion for a new trial, based upon an alleged disqualification of one of the jurors, presents no cause for reversing the judgment where it is not made to appear that both the accused and his counsel did not know and could not, in the exercise of diligence, have known before the trial the fact of the alleged disqualification.

6. "A bare complaint that 'the court erred' in giving a particular instruction brings nothing into question except soundness, in the abstract, of the proposition or propositions therein announced. If the instruction is abstractly correct, the question of its inapplicability to the case in hand must be distinctly made by clearly pointing out how or why it was inappropriate." Central Railway Co. v. Bond, 111 Ga. 14 (36 S. E. 300).

. The ground of the motion for a new trial based upon newly discovered evidence is without merit, it appearing that the evidence consisted merely in the fact that subsequently to the conviction of the plaintiff in error another person had been indicted for the murder of the same person for whose murder the plaintiff in error was convicted.

NOVEMBER 16, 1910.

Indictment for murder. Before Judge Felton. Bibb superior court. September 5, 1910.

W. D. McNeil and Ellis & Jordan, for plaintiff in error.

H. A. Hall, attorney-general, and W. J. Grace, solicitor-general, contra.

BECK, J. Thomas H. Jones was tried on an indictment charging him with murder. The person alleged to have been feloniously killed was Wiley Bishop. The evidence introduced on the trial was voluminous and conflicting. Eye-witnesses testified to the shooting of Bishop by the accused under circumstances which made the killing murder; other witnesses testified to facts that might have been considered as justifying or mitigating the offense; and still others testified that the accused did not fire the fatal shot, but that it was fired by John Jones. There were two counts in the indictment; one charging that the accused killed the deceased by shooting him with a pistol, and the other charging that he inflicted the wounds which resulted in death by striking the deceased on or about the

head with the butt of his pistol; and there was evidence introduced to show the character of the wounds inflicted on the head of the deceased, and tending to show that these were fatal wounds. The jury found the defendant guilty; whereupon he made a motion for a new trial, which upon the hearing was overruled, and the defendant excepted.

. 1.   After the verdict in this case was made, but before it was published, counsel for defendant made a motion for a mistrial, based upon certain alleged irregularities and improper conduct on the part of certain jurors; which motion, after hearing evidence, the court overruled; and it is recited in the bill of exceptions that the plaintiff in error assigns error upon this ruling of the court. No pendente-lite exceptions were filed, and the direct bill of exceptions in the case sued out to the judgment of the court overruling the motion for a new trial was not tendered within twenty days after the ruling complained of. Hence the assignment of error just referred to can not be considered by this court.

2.   While the exception to the ruling of the judge in refusing a mistrial was taken too late, considered as a direct exception to that ruling, the question as to whether the judge properly overruled the motion is raised in one of the grounds of the motion for a new trial; and it is to be considered there in the light of the showing made by the plaintiff in error and the counter-showing made by the State.

When the jurors, after having been charged with the consideration of the case, returned to the court-room and announced that they had made a verdict, counsel for the accused, before the rendition of the verdict, made a motion for a mistrial, stating to the court as a ground therefor that he had received information to the effect that certain jurors had stated to the officers of the court in charge of the jury that they had practically decided upon the verdict in the case the night before and that they stood eleven to one, and that this was prior to the charge of the court and before the argument of counsel had been concluded; and on the further ground that certain jurors had asked the bailiff in attendance upon the jury as to what was the bailiff's opinion about the case. In support of the motion counsel had one of the bailiffs in charge of the jury sworn before the court; and this bailiff, in response to questions directed to him, stated that two or three members of the jury questioned him

about the case and inquired of him what he thought of it; to which he replied that he had no right to talk about the case. The bailiff under examination also stated that on the morning of the day when the verdict was rendered and before argument of counsel was concluded one of the jurors said to him, "We came very near settling this last night; we talked it over;" and said, "All agreed except about one, and I don't think we will have any trouble in making a verdict." The bailiff further testified that no one was present but himself and the juror when that statement was made. The juror referred to in the foregoing testimony of the bailiff was one Riley. The bailiff further testified that the same juror referred to and another member of the jury spoke to him again in reference to the case, "and wanted to know what I thought about it, and I says, I can not tell you nothing, and he insisted upon it, and I says, 'all that I will say to you that I have always said I don't think Mr. Jones had anything to do with the shooting.' I expressed myself that far. . . I didn't express it as my opinion. I said that I always said I didn't think he was guilty." Further testifying the bailiff stated that Mr. Stakly (Stahle), a member of the jury, spoke to him and said they came very near settling the case last night, but he could not swear positively whether Mr. Stahle spoke to him after his talk with Mr. Riley or not, and that the only juror to whom he "really talked" was Mr. Riley, and the only thing said to him was that he (the bailiff) "always thought Jones had nothing to do with it—didn't fire the shot." It was made to appear from the testimony of the bailiff that the jury were kept together at night in sleeping apartments which consisted of seven rooms, with connecting doors leading from one to the other, and that the bailiffs were in charge of the end rooms and that no one could or did approach the jury except the bailiffs. The same bailiff further testified, in effect, that several of the jurors were persistent in discussing the case; and gave as an instance, that the night before, at the dining-table in the hotel where the jurors took their meals, several of them repeated the remarks to which the bailiff had referred in the preceding statement. What was said by the jurors was said out of the hearing of every one except themselves and the bailiff. No one else was near enough to hear the remarks. As a counter-showing the solicitor-general submitted affidavits of the members of the jury, contradicting the bailiff's testimony. The juror Riley, referred to in the

testimony of Thaxton, the bailiff, made an affidavit deposing that "he absolutely denies the correctness and truthfulness of the statements of the said Thaxton in his testimony set forth, and says that the following is everything that occurred with reference to said case during the trial thereof between the said Thaxton and this deponent and the other members of said jury or any of them, so far as this deponent knows, is informed, or believes, to wit: After the court had adjourned for the day on the second day of the trial of said case and the jury had been carried for the night to the hotel, and while deponent, George S. Bolton, George W. Barnes, and J. B. Baggarly were seated in one of the rooms that had been provided for the jury, conversing and laughing and talking with one another, the said Thaxton walked into the room and in substance said: 'Well, boys, I believe I can always tell how the verdict of a jury is going to be,' and deponent simply replied, 'Well, how do you think this verdict will be?' to which the said Thaxton answered: 'All I have got to say is, that Tom Jones never shot Bishop.' Immediately after this remark the conversation between deponent and the other members of the jury was resumed, and nothing other or further passed then or at any other time during said trial between the said Thaxton and deponent or any other member of the jury in deponent's presence; deponent paid no attention whatever to the remark of the said Thaxton at the time it was made, and would not have recalled it except for the testimony of the said Thaxton in the motion for a mistrial just before the verdict was received. Deponent denies absolutely that he said anything to the said Thaxton or the said Thaxton to him other than as detailed above, and also denies that the jury were persistent in discussing or talking about the case, as testified to by the said Thaxton, at the dining-table or elsewhere. On the contrary, this deponent says that the jury endeavored to obey and did obey the instructions of the court, and did not take up the discussion of said case until after the case had been fully heard and the charge of the court delivered to them and they had retired for the purpose of considering the case and reaching a verdict therein." The juror Stahle, referred to in Thaxton's testimony, also made an affidavit to the following effect: "That this deponent did not make to W. R. Thaxton, one of the bailiffs in charge of said jury, the remark attributed to deponent by said Thaxton to the effect that 'we [meaning the jury] were very near

settling this thing last night; we talked it over, and all agreed except about one; and I don't think we will have any trouble in making a verdict.' This deponent denies making any such remark to the said Thaxton at the time stated by him or at any other time, or any remark of similar import. Deponent had no conversation with said Thaxton about said case. Deponent further says that the jury which tried said case and every member thereof obeyed the instructions of the court as to the time and manner of considering said case, and acted in a proper manner throughout the entire trial of said case, so far as this deponent knows, is informed, or believes. Deponent heard no discussion of said case at the dining-table, as testified to by the said Thaxton, or elsewhere, until after the charge of the court and the jury had retired to their room to consider the case for the purpose of making a verdict therein." Jurors Bolton, Baggarly, and Barnes made affidavit deposing that they had read the affidavit of the juror Riley, and that the statements of fact set forth in said affidavit as to what occurred between Thaxton and Riley in the presence of deponents were true, and that nothing occurred concerning the case in the presence of the deponents and Thaxton, except as set forth in the affidavit of Riley; and further, that the jury, so far as deponents knew, obeyed the instructions of the court as to the time and manner of considering the case, and that there was no discussion of the case at the dining-table or elsewhere until after the charge of the court and the jury had retired to their room to consider the case; and that the jury were guilty of no impropriety during the trial, so far as deponents knew. The remaining jurors in the case filed their affidavit deposing that they did not hear any conversation concerning said case between Thaxton and any member of the jury, and denied the acts of impropriety charged in the testimony of Thaxton.

In consideration of the counter-showing made by the State, we do not think that there was any abuse of discretion on the part of the court in refusing to grant a new trial because of misconduct of the bailiff and certain jurors engaged in the trial of the case. The conduct of the bailiff testified to by himself, in speaking to a member of the jury in relation to the case on trial, whether it was in answer to a question propounded to him by one of the jurors or not, was grossly improper; and the conduct of a certain member of the jury, in addressing the remark to the bailiff as set out above,

was also improper. But nothing is shown to have occurred which could have affected the minds of the jury injuriously to the rights of the plaintiff in error. We can not conceive of any ill effects to the accused being caused by the statement of the bailiff in their hearing to the effect that he did not believe the accused shot Bishop (the deceased). When it was made to appear that certain members of the jury had, separately from other members of the jury, spoken to the bailiff, the burden was upon the State to show that nothing occurred which would be injurious to the person on trial. That burden was successfully carried; and the court did not err in overruling a motion for a new trial based upon the ground complaining of the misconduct of the bailiff in charge of the jury and certain members of that body.

3, 4. Another ground of the motion for a new trial complains of the admission of certain testimony over the objections of counsel for the accused. In this ground of the motion are embraced portions of the testimony of numerous witnesses, covering several pages of the record. Much of this testimony was clearly admissible; and while portions of it are objectionable, that which is objectionable is not specially excepted to and segregated from that which was admissible, but the objection, as it appears stated in the motion, did not point out nor indicate the objectionable portions; and for that reason the exception to the admission of the testimony is without merit. Besides, it does not appear in this ground of the motion what objections were urged to the admission of the testimony at the time it was offered; and because of this defect, also, the question as to whether the testimony should have been admitted or not is not properly raised in the motion for adjudication.

5, 6. The principles contained in headnotes 5 and 6 require no elaboration. They are mere restatements of rulings which have been made more than once by this court.

7. The ground of the motion based upon newly discovered evidence is without merit, it appearing that the evidence consisted merely in the fact that subsequently to the conviction of the plaintiff in error another person had been indicted for the murder of the same person for whose murder the plaintiff in error was convicted.

The evidence authorized the verdict, and no reason is shown for disturbing the judgment of the court below refusing a new trial.

*Judgment affirmed. All the Justices concur.*