## 6057.   ROBERSON v. THE STATE.

1. When evidence introduced in support of a ground of a motion for new trial is contradicted or explained, it is for the judge to determine the credibility of the witness presented by each party respectively; and the probative effect of the evidence as a whole is addressed to the sound discretion of the court.
2. It is the paramount duty of courts to insure fair and impartial trials, and the conduct of jurors during the consideration of a case should be free from all suspicion of extraneous or improper influence.  As a general rule, improper conduct on the part of a juror will be presumed to have been prejudicial to a fair trial; still, mere irregularities in the conduct of jurors, which clearly could not have affected the result, do not afford sufficient ground for setting aside a verdict, and even gross misconduct on the part of the jury may be held to have been waived where the losing party, though having knowledge of the misconduct, fails to make timely and appropriate objection and takes the chances on a verdict.
3. Where alleged irregular conduct of jurors is explained by testimony from which it appears · probable that the losing party was not injured by it, the verdict should not be disturbed if there .is evidence that during the trial the defendant's counsel knew of the alleged misconduct, and waived the right to move that the case be withdrawn from the consideration of the jury and that a mistrial be ordered.
4. The trial was free from material error, the verdict is supported by evidence, and there was no abuse of discretion in' passing upon the testimony submitted for and against the ground of the motion for new trial. relating to the presumptively prejudicial misconduct of the jury.

DECIDED DECEMBER 24, 1914.

Indictment for assault with intent to murder; from Telfair superior court—Judge Graham.   October 28, 1914.

B. M. Frizzelle, Hamilton Burch, for plaintiff in error.

W. A. Wooten, solicitor-general, Eschol Graham, contra.

RUSSELL, C. J.   Roberson was indicted for the offense of assault with intent to murder, and was convicted with a recommendation that he be punished as for a misdemeanor.   He excepts to the overruling of his motion for new trial.   In addition to the usual general grounds, the defendant alleged, in his motion for new trial, that during the trial of the case and after the judge had charged the jury and the jury had retired to the jury-room, the jury obtained a copy of the Penal Code of Georgia, and a member of the jury read to and in the presence of the jury certain portions of the law therein contained, in order to convince the jurors that he was right in his recollection of the charge as given them by the presiding judge.   It was .further alleged that the book was obtained

35

by Burkhalter, the foreman of the jury, the evening of the day before the verdict was rendered, and that the book remained in the room with the jury until the next morning. It is further stated, in the motion for a new trial, that neither the defendant nor his counsel knew of the misconduct on the part of the jurors until the following morning, and that immediately upon hearing of it one of the defendant's counsel reported the fact to the court. The judge ordered the sheriff to go to the jury-room and secure the book, and the sheriff did this, but it is alleged that neither the defendant nor his counsel knew "this fact [that the code was in the jury-room] from the sheriff nor anyone else to be correct until after the verdict of the jury in said case had been rendered and the defendant sentenced."

1. No errors of law are alleged to have been committed in rulings upon the testimony nor in the charge of the court, and there was sufficient evidence to authorize the verdict of guilty; so that the only ground which requires consideration is the amendment to the motion for a new trial, relating to the alleged misconduct of the jury. Upon consideration of this special ground of the motion numerous affidavits were submitted to the court, some of them supporting the ground, and others, in behalf of the State, tending to show that the circumstance referred to was not prejudicial to the accused, and also that two of defendant's counsel had knowledge of the irregularity before a verdict was rendered and while the case was still pending before the jury. It is uncontradicted that Burkhalter, the foreman, separated himself from his fellow jurors by leaving the jury-room when they were considering a verdict, and that when he returned he brought with him a copy of the Penal Code of Georgia and proceeded to read to the jury from the code upon a question about which there had been some difference among the jurors as to the charge of the court. The sections read by Burkhalter related exclusively to the punishment imposed in cases of assault with intent to murder when there was no recommendation, and to the right of the jurors to recommend punishment as for a misdemeanor in such cases.

This case differs from that of *Lovett* v. *State,* 60 *Ga.* 357, where it was held that the fact "that the jury had a copy of the code in their room for a brief time, which, without reading a single line, they sent out, is of no consequence," for in this case two sections of the code were read by a juror and were discussed by the jury;

and had it appeared that neither the defendant nor his counsel knew of this misconduct until after the verdict, we should be inclined to hold it so presumptively prejudicial as to demand a new trial. While the contrary may always be made to appear, any departure from the orderly conduct which should characterize a fair trial must, prima facie at least, be presumed to have been prejudicial to the losing party.

However, the real point at issue upon the hearing of the motion in the instant case was as to whether the defendant's counsel knew of the misconduct of the jurors prior to the verdict, and whether he did not waive the point by taking his chances upon a verdict of acquittal. Upon this point the testimony was in conflict. The testimony for the movant tended to show that while counsel for the defendant had heard a rumor that the jury had a code in their room, he did not in fact know that the statement was true, that he promptly called the attention of the court to this rumor and the court ordered an investigation by the sheriff, and that counsel did not hear anything more of the matter. Had the court accepted this view of the evidence it would be held that counsel for the defendant might naturally and reasonably have assumed that the rumor was groundless.

Movant's counsel testified by affidavit that upon the sheriff's return from the jury-room that officer reported to the affiant that his information as to the jurors having a code was incorrect, and for this reason counsel was not apprized of the actual facts as to the misconduct of the jurors until the jury that tried the case had been discharged. On the other hand, there was testimony on the part of the sheriff (merely negative it is true) that he did not remember telling counsel that the book had not been in the jury-room and that he did not remember having any conversation with the defendant's counsel (Mr. Frizelle) concerning the book one way or the other. However, there was also before the court an affidavit of one of State's counsel to the effect that he learned in the morning, after the case had been submitted to the jury the previous night, that one of the jurors had obtained a Penal Code during the night, and that about half past eight o'clock of that morning he informed defendant's attorney of the fact that the jury had obtained a Penal Code during the night, and that thereupon the defendant's counsel told him that he had already found out

about it himself, and that it was all right. According to the affidavit of Mr. Graham, of State's counsel, this conversation occurred early in the morning, and the jury did not return their verdict until late in the evening of that day; thus affording the defendant and his counsel ample opportunity to object before the verdict. While we have no doubt that the learned trial judge who presided in the case would have granted the defendant a new trial if it had only appeared that the jurors had procured a code and read therefrom sections applicable to the case (for the reason that had nothing more than this been made to appear, conduct so strongly in contravention of orderly procedure would be presumably prejudicial to a fair trial), still, we find no error in the court's refusal to sustain this ground of the motion after the State's counter-showing as to the defendant's knowledge of the facts before verdict, which authorized the inference of an implied waiver on the part of the defendant of his right to object. When the merit of a ground of a motion for a new trial depends upon the consideration of original evidence introduced in support thereof, and the evidence in support of the motion is contradicted or explained, or the impeachment of any of the witnesses is attempted, it is for the court to determine as to the credibility of the witnesses presented by each party respectively, and the probative effect of the evidence as a whole is addressed to the sound discretion of the court. The evidence being in conflict, it was for the court to determine, from the evidence submitted, whether the defendant's counsel did or did not, before the verdict, know of the misconduct of the jurors; and since there was ample evidence to support the court's finding upon this point, it can not be said that there was any abuse of discretion. The testimony as to whether the defendant's attorney actually knew of the alleged misconduct of the jury was in acute conflict. The trial judge was the only trior to appraise the credibility of the witnesses, and he determined the issue adversely to the movant's witnesses, and there was sufficient evidence to support the implication of a waiver of the defendant's right to object.

2. It is the paramount duty of all courts to insure fair and impartial trials, and this court has held that the conduct of jurors during the consideration of a case should be free from all suspicion of extraneous or improper influence. Improper conduct on the part of a juror is to be presumed to have been prejudicial to a fair

trial. But we have also held that mere irregularities in the con-
duct of a juror which it is affirmatively shown could not have
affected the result do not afford sufficient ground for setting aside
a verdict. *Waller* v. *State,* 2 *Ga. App.* 636 (58 S. E. 1106). To
the same effect is the ruling of the Supreme Court in *Robinson* v.
*State,* 109 *Ga.* 506 (34 S. E. 1017). And even gross misconduct
on the part of the jury may be held to have been waived where the
losing party, though having knowledge of the misconduct, elected
not to make timely and proper objection, but to take the chances
of a favorable verdict.

3. The reason why the verdict of a jury should be free even
from suspicion of improper influence is based upon considerations
of sound public policy so just and so compelling that we have pre-
ferred not to rest the decision of this case upon the proposition that
the irregularity was shown to have been harmless to the defendant,
but to place our ruling rather upon the ground that the trial judge,
having found that the defendant knew of the misconduct of the
jurors prior to the return of the verdict, the lower court properly
held that the defendant had waived all objection to any irregularity
which might otherwise have vitiated the trial. It is true that it
has been held not to be error to overrule a motion for a new trial
based upon acts of misconduct on the part of members of a jury,
the acts in themselves not being hurtful to the accused or preju-
dicial to his rights. *Jones* v. *State,* 135 *Ga.* 357 (69 S. E. 527).
In the *Lovett* case, supra, the court held that proof that the code
which the jury had in their room for a brief time was not opened
or read by any juror was of no consequence. And in *Allen* v.
*State,* 61 *Ga.* 166, there was a code in the room with the jury, which
was affirmatively shown not to have been opened or read, as well
as evidence of certain remarks foreign to the case made by certain
of the jurors to passers by, and evidence of contact on the part of
one of the jurors with an outsider whose interest in the case (if
any existed) was in favor of the accused. Judge Jackson, speak-
ing for the court, in the *Allen* case, said: "The rule of law is
that if affidavits are made which show that the conduct of the jury
was so irregular that the defendant was or could have been injured
by that conduct, then the State must rebut fully and clearly and
satisfy the court that he was not injured and could not have been
injured by such conduct." In *Shaw* v. *State,* 83 *Ga.* 92 (9 S. E.

68), Judge Simmons said: "There are many things which can be done by individual members of the jury or by the whole jury which are susceptible of such clear explanation that the trial judge would be authorized in refusing to set a verdict aside. There are other things, however, which, if done by individual members of the jury or by the whole jury, are so contrary to the public policy of the State in the procurement of fair and impartial trials as to require that a verdict rendered by such a jury be set aside whether the defendant has been injured thereby or not. . . The State is jealous of the rights and liberties of its people. When one of its citizens is accused of crime it throws around him all the safeguards that are possible in order to procure him a fair and impartial trial. It contemplates that no outside influence shall be brought to bear on the minds of the jury, and that nothing shall occur outside the trial which shall disturb their minds in any way." In *Smith* v. *State*, 122 *Ga.* 154-157 (50 S. E. 62), Chief Justice Simmons said: "This court, from the time of its organization to the present time, has striven to protect the purity and impartiality of jury trials, and wherever there have been irregularities, unless fully explained and the court satisfied that the accused has not been injured, new trials have been granted. Where the misconduct of the officers and jury has been gross, this court and others have held that a new trial should be granted on account of public policy, whether the accused was injured or not."

Though it is well settled in this State that misconduct on the part of jurors will be presumed to be injurious to the losing party and casts upon the prevailing party the burden of showing, in the event of any irregularity, that this departure from orderly proceedure did not injure the losing party, and though it is equally well settled that there are some acts of misconduct so gross that public policy forbids any inquiry into their probable effect and conclusively presumes such injury as demands another trial, we are not compelled to decide whether the jurors' examination of the Penal Code for themselves, to ascertain the rules prescribing punishment for assault with intent to murder, may properly be held to have been harmless (in view of their having recommended that the defendant be punished as for a misdemeanor), or to rule that the acquisition and use of principles of law from any other source than the judge, who is the only tribunal authoritatively empowered to

impart them, must be deemed contrary to public policy. In order for misconduct of a jury to be cause for a new trial, it must affirmatively appear that neither the party complaining nor his counsel had any knowledge of such misconduct before the verdict was rendered. *Brooks* v. *Camak,* 130 *Ga.* 213-217 (60 S. E. 456); *Styles* v. *State,* 129 *Ga.* 425 (59 S. E. 249, 12 Ann. Cas. 176). And since the trial judge in this case was authorized to give the preference to the testimony to the effect that counsel for the defendant knew of the misconduct of the jury in ample time to have made an appropriate motion, the ground of the motion was not supported, in accordance with the principle stated in *Cogswell* v. *State,* 49 *Ga.* 103, *Wynn* v. *City & Suburban Ry.,* 91 *Ga.* 344 (17 S. E. 649), and *Hunter* v. *State,* 43 *Ga.* 483. If the defendant or his counsel knew of the misconduct of the jury during the progress of the trial, it was his duty to make an appropriate objection and a timely motion, instead of remaining silent and taking his chances for an acquittal until after the verdict was rendered. *Carter* v. *State,* 56 *Ga.* 463; *Cannon* v. *Bullock,* 26 *Ga.* 431; *Eberhardt* v. *State,* 47 *Ga.* 598 (5); *Kirk* v. *State,* 73 *Ga.* 620. Upon considerations of sound public policy verdicts will sometimes be set aside regardless of whether injury resulted to the losing party or not. See *Rainey* v. *State,* 100 *Ga.* 82 (27 S. E. 709); *Alabama Great So. R. Co.* v. *Brown,* 140 *Ga.* 792 (79 S. E. 1113). But the courts will not ordinarily grant a new trial upon the ground of misconduct or irregularity known to counsel for the movant and not excepted to until after verdict, unless it appears that the prevailing party or some person directly interested was connected with and a party to the irregularity. In cases where, as in the present case, the irregularity in the trial was known to the movant, and even where it did not affirmatively appear that it was unknown, it has uniformly been adjudged that the irregularity was waived, unless the matter was appropriately called to the attention of the court before the verdict.

4. The trial was free from material error, the verdict was supported by evidence, and there was no abuse of discretion in passing upon the testimony submitted for and against the ground of the motion for a new trial relating to the presumptively prejudicial misconduct of the jury. *Judgment affirmed.*