19794.  STUCKEY *v.* THE STATE.

ARGUED SEPTEMBER 9, 1957—DECIDED OCTOBER 11, 1957.

*D. E. Turk, Turk & Morgan, J. C. McDonald, McDonald & McDonald,* for plaintiff in error.

*Harvey L. Jay, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

MOBLEY, Justice. 1. In special grounds 1 and 3 it is contended that the trial judge erred in failing to charge the law of voluntary manslaughter, even though no request to charge this principle of law was made. It is contended that the jury was authorized to find that the defendant killed the deceased to prevent the commission of a trespass, in that he was attempting to prevent the deceased from taking the car. There is no evidence to show that the deceased was attempting to commit a felony upon the person or property of the defendant, and even if, as contended, the defendant did kill the deceased to prevent a trespass upon the property not amounting to a felony, it would not be manslaughter but would be murder. In *Hayes* v. *State*, 58 *Ga.* 35, 46, it was held: "To intentionally kill, with a deadly weapon, one who is committing a trespass upon property, is generally murder, and not manslaughter." Again, in *Parks* v. *State*, 105 *Ga.* 242, 247 (31 S. E. 580), where, as here, it was contended that the killing was accidental and error was assigned upon the failure to charge on voluntary manslaughter, the court held: "In the present case the accused did not claim that the homicide was the result of passion. On the contrary, it was the theory of his defense, emphasized by his statement, that the killing was not intentional; that he did not know that the object at which he fired was a human being; and it is difficult to see, under the evidence as it appears in the record, how the law of voluntary manslaughter can be made to apply. A man has a right to eject an intruder from his house or premises, and to use such force as is necessary to accomplish that purpose; but a civil trespass on the land or property of another not his dwelling-house, is never sufficient to reduce the intentional killing of the trespasser, with a deadly weapon, from murder to manslaughter. *Hayes* v. *State*, 58 *Ga.* 35." See also *Nix* v. *State*, 120 *Ga.* 162, 163 (47 S. E. 516). While in *Crawford* v. *State*, 90 *Ga.* 701, 707 (17 S. E. 628, 35 Am. St. R. 242), the court stated that, if circumstances should show that a killing was the result of a sudden, violent impulse of passion, provoked by a trespass upon property,

and acted upon before the passion had time to cool, then such trespass might be said to amount to a reasonable provocation sufficient to justify the excitement of passion and operate to reduce the offense to manslaughter, this was clearly obiter dictum, and in the instant case there is no contention that the defendant acted under a sudden impulse of passion, and the evidence does not support such a theory. We have found no case where a killing merely to prevent a trespass upon property not at the habitation of the defendant, unaccompanied by any other circumstances, has been held to be manslaughter and not murder. A charge on voluntary manslaughter was not authorized by the evidence in this case, and the court did not err in failing to charge thereon.

2. In special ground 2 error is assigned upon the charge to the effect that the jury should, if possible, reconcile the evidence so as not to impute perjury to anyone, but that if there was an irreconcilable conflict in the evidence then they should believe that which to them appeared most reasonable and worthy of belief under all of the circumstances. This charge did not, as contended, instruct the jury unequivocally that it was their duty to reconcile the evidence so as not to impute perjury to anyone but instructed them that they should do so if possible. See in this connection, *Barton* v. *State,* 79 *Ga. App.* 380, 387 (53 S. E. 2d 707). This ground is without merit.

3. In special ground 4 it is contended that the court erred in charging as follows: "The defendant contends that the shooting of the pistol referred to in this case was accidental and he says he is not guilty, but that if he did the act and caused the pistol to be discharged and caused the deceased to lose his life, it is attributable to accident; and if you believe that contention of the defendant, then you would acquit the defendant in this case." In his statement to the jury the defendant stated, with reference to how the shooting occurred, as follows: "When we got close together he grabbed me, and the gun was an automatic and it went off, how I don't know. . . The gun would have never went off no more if he hadn't grabbed me and pulled me—I don't know how it went off but he pulled me into him." Witnesses to the shooting testified that the defendant had the pistol in his hand and had his hand and arm pointed up in the air above his

head when the deceased came up, grabbed that hand, jerked it down, and the pistol fired. From the defendant's statement it is evident that he contended the shooting was accidentally caused, not by any act on his part, but by the act of the deceased in grabbing and pulling him. Nowhere in his charge did the trial judge present this theory of the case, the only charge as to the defendant's contention being that excepted to in this ground. "While the judge is not required to charge upon a theory of defense resting solely on the statement of the accused, in the absence of an appropriate written request to that effect, still when the judge of his own motion undertakes to so charge, the instruction given must be correct law and applicable to the theory of the defense set up in the statement." Richards v. State, 114 Ga. 834 (1) (40 S. E. 1001); Smiley v. State, 156 Ga. 60, 62 (7a) (118 S. E. 713). In our opinion the theory of defense made by the defendant was not, as charged, that if he killed the deceased it was an accident, but rather he contended that the deceased accidentally caused the pistol to fire when he grabbed and pulled him. The first theory presents the defendant's case in a negative manner, to wit, that, if he killed the deceased, it was accidental; while the latter presents a positive view of the case, to wit, that the deceased accidentally caused it by grabbing and pulling him. The assignment of error in this ground is meritorious and requires the grant of a new trial.

4. Special grounds 5 and 6 are argued together by counsel for the defendant and will be so considered. These grounds complain of alleged improper conduct in failing to keep the jury together during the course of the trial. On the trial the jury deliberated until around 11 p. m. without reaching a verdict, at which time, upon agreement of defendant's counsel, they were transported to Fitzgerald to spend the night at a hotel there, four of the jurors riding with the Sheriff of Wilcox County, three in a second car driven by one of the jurors, and five in a third car driven by another of the jurors. There was no official of the court in the third car. All the cars left and arrived at approximately the same time and made the trip tandem-fashion, remaining in sight of each other. Special ground 5 excepts to a separation of the jury in this manner. Special ground 6 alleges that, upon arrival of the jury at Fitzgerald, each of the jurors was imme-

diately assigned a room on the second floor of the hotel; that said rooms were between the rooms assigned to the bailiff and the sheriff; that, at about 5 o'clock the following morning, the bailiff went downstairs and drank coffee at the desk with the desk clerk; that at about 5:30 the sheriff came downstairs; that the sheriff and bailiff remained downstairs for approximately thirty minutes waiting for the jury to come down to breakfast, except for two trips made by the sheriff to hurry them up; that, while the sheriff and bailiff were downstairs, the jury was unattended. It is contended in ground 6 that it was error for the jury to be allowed to sleep in separate rooms, and that under the circumstances the jury were practically unattended during the night and were actually unattended for a time the following morning. All of the above with reference to separation of the jury is alleged to have taken place without the knowledge or consent of the defendant and was not learned until after the verdict had been rendered. As a countershowing, the State introduced affidavits of each of the jurors to the effect that, while they were out of the jury room, none of them had any communication with any person upon the subject of the trial and no one discussed the case with any of them or in their presence. Affidavits were likewise presented from the bailiff and sheriff who had charge of the jury, averring that no one discussed the case with any of the jurors or in their presence, and that the jury did not discuss it among themselves.

"Where there has been an improper separation of the jury during the trial, the prisoner, if found guilty, is entitled to the benefit of the presumption that the irregularity has been hurtful to him; and the *onus* is upon the State to show, beyond a reasonable doubt, that the defendant has sustained no injury on account of the separation." *Monroe* v. *State*, 5 *Ga.* 85 (10). It is not charged or shown that the separation of the jury caused any actual injury to the defendant, and the only question for decision presented by these two special grounds is whether the judge was authorized to find that the presumption of injury was overcome. In *Morakes* v. *State*, 201 *Ga.* 425 (4) (40 S. E. 2d 120), it was held that: "Where no actual injury is charged or shown, the presumption of injury arising upon irregularities in

the conduct of jurors selected to try the accused may be rebutted." Since the defendant failed to charge that he was injured in any way by the procedure set out in these grounds, and since the evidence for the State affirmatively showed that there was no communication with or in the presence of any of the jurors concerning the trial, either directly by conversation or by hearing observations of others, the trial court was authorized to find that the presumption had been overcome, and to overrule these grounds of the motion. *Jones* v. *State*, 135 *Ga.* 357 (2) (69 S. E. 527); *Robinson* v. *State*, 109 *Ga.* 506 (7) (34 S. E. 1017); *Peavey* v. *State*, 153 *Ga.* 119 (111 S. E. 420).

5. The general grounds of the motion for new trial are not meritorious.

*Judgment reversed. All the Justices concur.*