313 Ga. 698
FINAL COPY

S22A0025.  JOHNSON v. THE STATE.

COLVIN, Justice.

Following a jury trial, Hymetheus Johnson was convicted of one count of malice murder and one count of theft by taking in connection with the shooting death of Javontae Passard.[1]  Johnson appeals, alleging that the trial court erred in refusing to give a requested jury instruction on voluntary manslaughter as a lesser offense of the charges of malice murder and felony murder.  For the reasons set forth below, we affirm Johnson's convictions.

---

[1] The crimes occurred on July 15, 2016.  On October 18, 2016, a Bibb County grand jury indicted Johnson on the following counts: malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), and hijacking a motor vehicle (Count 3).  At a jury trial held from June 20 to 22, 2018, Johnson was found guilty of the first two counts and guilty of theft by taking, a lesser-included offense of the crime charged in Count 3.  The trial court merged Count 2 with Count 1, but that count was actually vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993). Johnson was sentenced to life imprisonment for Count 1 and a concurrent 12-month sentence for Count 3.  Johnson timely filed a motion for new trial on June 26, 2018, and amended the motion on March 3, 2021.  After conducting a hearing on June 2, 2021, the trial court denied the motion for new trial on June 8, 2021.  The appeal was docketed to this Court's term beginning in December 2021 and submitted for a decision on the briefs.

The evidence presented at trial showed the following. On July 14, 2016, Johnson slept in a car owned by his friends, twins Tyron and Kyron Jackson, who kept a 9mm handgun in the car. The next day, Johnson and the twins drove the car to a barbershop. The Jacksons went inside while Johnson stayed in the vehicle. The Jacksons returned to the car with Passard, a friend of the group. The four men then drove to Johnson's mother's house. Johnson had told the group that his mother did not want him bringing guests with him, so they parked the car, and Johnson went into his mother's home alone to gather some belongings.

Shortly after Johnson went into the house, Passard walked up to the front door and knocked. Johnson's mother, who was engaged in a verbal argument with Johnson, opened the front door and took Johnson's younger siblings across the street to a neighbor's house. Johnson then left the house, and Passard, standing near the front door, told Johnson he should not speak to his mother like that. A verbal altercation ensued. Johnson yelled at Passard to get away from the house. In response, Passard told Johnson to stop yelling at

2

him, and he refused to leave. Although Johnson called for the Jacksons to take Passard away from the house, the twins remained in or near the car.

Johnson then pulled out the Jacksons' gun, which, unbeknownst to the Jacksons, Johnson had taken from the car. Johnson waved the gun around and pointed it at Passard's face. In response, Passard grabbed Johnson's hand and shoved the gun away, causing Johnson to stumble backward.

Johnson regained his footing, racked the slide twice, ejecting two live rounds of ammunition, and then fired two shots at Passard, striking him in the chest and lower abdomen. Johnson then got into the Jacksons' car and drove away. Passard died shortly thereafter.

Johnson contends that the trial court erred when it refused to give a requested jury instruction on voluntary manslaughter as a lesser offense of both malice murder and felony murder predicated on aggravated assault.[2] A person commits voluntary manslaughter

---

[2] Because the felony murder count was vacated by operation of law, Johnson's contention as to this offense is moot. See *Mills v. State*, 287 Ga. 828,

if he or she

> acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such a passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). A trial court is required to give a requested charge on voluntary manslaughter if there is slight evidence supporting the charge. See *Hatney v. State*, 308 Ga. 438, 441 (2) (841 SE2d 702) (2020).

Johnson contends that he was entitled to a voluntary manslaughter instruction because his "passion was provoked by Passard's uninvited entrance upon his mother's doorstep, refusal to leave, confrontational words, and physical pushing [that caused] Johnson to stumble." However, no evidence supported a finding that Passard's actions rose to the level of provocation necessary to

---

830 (2) (700 SE2d 544) (2010) (explaining that where a felony murder count was vacated by operation of law, alleged errors underlying the count were rendered moot).

4

support a voluntary manslaughter charge. The fact that an uninvited guest approaches the defendant's door, knocks on the door, and then does not immediately comply with a request to leave is not conduct that would provoke in a reasonable person an irresistible passion to kill the unwanted guest. See *Stuckey v. State*, 213 Ga. 525, 526 (1) (100 SE2d 189) (1957) ("To intentionally kill, with a deadly weapon, one who is committing trespass upon property, is generally murder, and not manslaughter." (citation and punctuation omitted)). Further, evidence that Johnson and Passard had an argument—even a heated one—does not warrant a voluntary manslaughter charge. See *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013) (holding that "angry statements" generally do not amount to serious provocation within the meaning of the voluntary manslaughter statute); *Gresham v. State*, 289 Ga. 103, 104 (3) & n.2 (709 SE2d 780) (2011) (holding that evidence that the defendant and victim argued over money and the victim threatened to shoot the defendant in the future did not warrant a voluntary manslaughter charge). Finally, the fact that Passard shoved Johnson in response

5

to Johnson pointing a gun at Passard's face at most shows that Passard physically resisted Johnson's unlawful act,[3] which is "[not] the type[ ] of provocation which demand[s] a voluntary manslaughter charge." *Merritt v. State*, 310 Ga. 433, 441 (4) (b) (851 SE2d 555) (2020) (citation and punctuation omitted). See also *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000) ("[A] voluntary manslaughter charge is not warranted when the only alleged evidence of provocation is the victim resisting an armed robbery.").

Absent any "evidence of any specific provocation at or around the time of the murder[ ]" that would generate in a reasonable person a sudden and irresistible passion to kill, *Johnson v. State*, 297 Ga. 839, 843 (2) (778 SE2d 769) (2015) (citation and punctuation omitted),  the trial court did not err in declining Johnson's request for a voluntary manslaughter instruction.

*Judgment affirmed.  All the Justices concur.*

---

[3] See OCGA § 16-5-21 (a) (2) (explaining that one commits the offense of aggravated assault when one assaults another "[w]ith a deadly weapon").

6

Decided May 17, 2022.

Murder. Bibb Superior Court. Before Judge Simms.

*Manning Peace, Holly Y. Peace*, for appellant.

*Anita R. Howard, District Attorney, Cara R. Fiore, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.