319 Ga. 140
FINAL COPY

S24A0351. JONES v. THE STATE.

Boggs, Chief Justice.

Appellant Darious Jones challenges his 2016 conviction for felony murder in connection with the beating death of Faith Parke. Appellant contends that the evidence was constitutionally insufficient; that, due to his mental condition, the trial court erred by allowing him to decide whether to testify without further inquiry; that the trial court erred in refusing to give the voluntary manslaughter-related instructions that he requested; and that the trial court erred in sentencing him to life without the possibility of parole. However, as explained below, we conclude that the evidence was sufficient because, among other things, Appellant arranged to meet Parke at the location where she died; Appellant's DNA and fingerprints were at the crime scene, including on a doorstop bar near Parke's body; and Parke had injuries matching the pattern on the end of that doorstop bar. Furthermore, Georgia law does not

require a trial court to advise a defendant concerning his right to testify or to make the type of inquiry that Appellant asserts the trial court should have made here, and the trial court properly refused to give Appellant's requested instructions regarding voluntary manslaughter because no evidence supported them. Finally, Appellant's sentencing argument fails. Accordingly, we affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On May 11, 2015, Appellant texted and called Parke, arranging to meet and to pay her money in

---

[1] The crime occurred on May 12, 2015. On July 30, 2015, a DeKalb County grand jury indicted Appellant for malice murder, felony murder, and aggravated assault. At a trial from August 29 to September 2, 2016, the jury found Appellant not guilty of malice murder but guilty of felony murder and aggravated assault. The trial court sentenced Appellant to serve life in prison without the possibility of parole for felony murder. The aggravated assault count merged. Appellant filed a timely motion for new trial, which he amended with new counsel on July 6, 2021. On August 17, 2022, before the trial court held a hearing or ruled on the motion for new trial, Appellant filed a notice of appeal. After an evidentiary hearing on August 11, 2023, the trial court entered an order denying the motion on September 20, 2023. Appellant's original notice of appeal ripened upon the entry of the trial court's denial of his motion, see *State v. Hood*, 295 Ga. 664, 664-665 (763 SE2d 487) (2014) (explaining that a notice of appeal filed before a trial court denies a motion for new trial ripens upon a denial of that motion), and although Appellant was not required to do so, he also filed a timely amended notice of appeal on October 16, 2023, after the trial court denied his motion. The case was docketed in this Court to the term beginning in December 2023 and submitted for a decision on the briefs.

2

exchange for sexual acts. After texting and calling each other's phones throughout the night and into the next morning, they eventually agreed to meet on May 12 at a vacant house next door to where Appellant lived with his mother, and that Appellant would pay $80 for 30 minutes of Parke's time. A neighbor who lived across the street from the vacant home testified that at around 9:00 a.m. on May 12, she saw a young female wearing a striped dress and talking on a cell phone park a PT Cruiser vehicle in front of the vacant house. The neighbor did not see the female enter the house.

A few hours later, Bernard Nguyen, a maintenance man, arrived at the vacant home to prepare it for a new tenant. As he began cleaning on May 12, he noticed blood in an upstairs bathroom. He then noticed blood near the stairs that he overlooked when he first went up the stairs. Not finding anyone upstairs, he checked a downstairs bedroom, where he saw a woman later identified as Parke face-down on the floor in a pool of blood. Nguyen called his wife and then 911. Nguyen further testified that the home had two sliding glass doors that led to the outside, one in the living room and

3

another in the bedroom where he found Parke's body. Both sliding glass doors usually had matching metal doorstop bars that secured them, and both bars were in place the day before when Nguyen left. On May 12, however, the doorstop bar was missing from the door of the bedroom where he found Parke.

Investigator Kelly Freeman of the DeKalb County Police Department responded to the scene. She observed that the doorstop bar was missing from the door in the bedroom where Nguyen discovered Parke's body. However, she found the missing doorstop bar in the closet of that bedroom. In the kitchen trashcan, she found what appeared to be bloody paper towels, a condom, and a condom wrapper. Nguyen testified that when he left the house the day before, there was no blood anywhere inside, nor was there a condom in the trashcan. Investigator Freeman took photos of Parke's head, including "possible brain matter" that was exposed due to a "defect to [Parke's] head" and possible defensive wounds. Parke's wounds were so severe that Investigator Freeman could see directly into Parke's skull. Photos that Investigator Freeman took at the crime

4

scene were admitted into evidence and showed that Parke was wearing striped clothing.

Sergeant M. S. McLendon of the DeKalb County Police Department testified that he obtained a search warrant for Parke's car and inspected her cell phone. He found the last phone number that Parke's phone contacted, discovered that the phone number belonged to Appellant, and found Appellant's address, which was next door to the crime scene. Sergeant McLendon further testified that he obtained a search warrant for Appellant's DNA, went to Appellant's house, and transported Appellant to the police station to execute the search warrant. At the police station, Sergeant McLendon noticed "cuts and injuries" on Appellant's hands.

Jennifer Jones, Appellant's mother, testified that Appellant was about 21 at the time of Parke's death, had "ADHD, . . . opposition defiant disorder, mild mental retardation, and . . . [a] learning disability," and graduated high school with a "transitional diploma" for students with "disabilities that most likely would not be able to pass the high school graduation test because their IQ is

too low and they already know that they won't." Jennifer further recalled that on May 16, police came to her house, which she shared with Appellant and other relatives. An officer drove Appellant to the police station, and Jennifer followed them to the station. Jennifer informed police that Appellant "had a disability."

On the way home from the police station that evening with Appellant, Jennifer "kept asking him what's going on." Appellant "had a frightened look on his face" and eventually told her that "it was a accident. You know I wouldn't hurt nobody." Appellant's eyes filled with tears as he spoke. They drove home without talking further. When they got home and were walking into the house, Appellant said, "[I]t's a bag in the garage." Jennifer found a black trash bag in the garage of her home but could not bring herself to open it. The next day, Jennifer drove Appellant to the police station to "turn him in," took the bag with her, and again told police that Appellant "ha[d] a disability." Police obtained a search warrant for the bag, which one officer testified smelled "like a decomposing body," and examined it. Inside, officers found various items,

6

including clothes, shoes, a washcloth, gloves, and a towel, which were bloody. Police then arrested Appellant for murder.

At trial, Erica Turner of the Georgia Bureau of Investigation testified for the State as an expert in latent print examinations. Turner identified Appellant's fingerprint on the doorstop bar that police collected from the closet of the bedroom where Parke's body was found. She also matched to Appellant a fingerprint on a piece of vinyl siding that was located on the outside of the house near the sliding glass door leading to that bedroom.

Betzaida Maldonado of the Georgia Bureau of Investigation testified for the State as an expert in DNA analysis and typing. Maldonado testified that the condom police found in the trashcan of the home contained Appellant's DNA.

Dr. Gerald Gowitt, the chief medical examiner for DeKalb County who performed Parke's autopsy, testified for the State as an expert in forensic pathology. Dr. Gowitt explained that Parke's injuries were mostly "confined to the head and neck and right and left arms" and that her injuries were "too numerous to count." He

7

further recounted that during the autopsy he discovered "pattern injuries" on the left side of Parke's head and face that matched the end of a doorstop bar recovered from the scene. The pattern injuries were "entirely consistent with being struck with a significant amount of force by the end of that pipe, not by the shaft part, but by the end of that pipe, enough to bruise the skin and leave a mark on the skin in the form of a bruise that looks like the end of the rubber stopper" on the doorstop bar, and Dr. Gowitt testified that he was fairly confident that Parke's injuries were "made by the end of [the] doorstop" bar. He also noted that Parke had a bite mark on her left elbow, that some of her injuries appeared to be defensive, and that she had $50 in cash tucked underneath her clothing. Dr. Gowitt concluded that Parke would have been "awake and aware of what was happening to her" for a portion of the beating and that her cause of death was blunt head trauma.

2. Appellant first contends that the evidence was insufficient as a matter of constitutional due process to support his conviction. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560)

8

(1979). In Appellant's estimation, the State presented conflicting and questionable evidence at trial that might have confused the jury and did not authorize the jury to find that the State proved the essential elements of the crimes beyond a reasonable doubt. "In evaluating a challenge to the sufficiency of the evidence as a matter of constitutional due process, we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which [he] was convicted." *Lopez v. State*, 318 Ga. 664, 667 (898 SE2d 441) (2024). Indeed, "it is well settled that it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." *Reed v. State*, 314 Ga. 534, 537 (878 SE2d 217) (2022) (cleaned up).

The evidence presented at trial and summarized in part above was sufficient to authorize Appellant's conviction. The search of Parke's phone and testimony at trial showed that Appellant

9

arranged to meet Parke on the same day as and at the same location where the maintenance man found her body. Appellant's fingerprints were on the doorstop bar from the closet of the bedroom where Parke's body was found as well as on the siding outside the room, and Parke's pattern injuries matched the design on the end of the doorstop bar. See *Reaves v. State*, 292 Ga. 545, 545-546 (739 SE2d 368) (2013) (holding that the evidence was sufficient to authorize the defendant's conviction for felony murder, relying, in part, on evidence that the child victim had pattern injuries, and the patterns matched a baseball bat and a broken umbrella police recovered from the defendant's home). Appellant's DNA was also on the condom police recovered from the trashcan. See *Ballard v. State*, 297 Ga. 248, 248-249 & n.1, 255 (773 SE2d 254) (2015) (holding that the evidence was sufficient to support conviction for felony murder predicated on aggravated assault, relying, in part, on evidence that the defendant's DNA was on a water bottle in the hotel room, which placed the defendant at the crime scene). The jury was not required to accept Appellant's claim that the killing was an accident and

could have concluded based on the evidence recited above that he beat Parke intentionally, causing her death. See *Brown v. State*, 291 Ga. 892, 895 (734 SE2d 23) (2012) (recognizing a jury's authority to disbelieve a defendant's version of events and to accept the State's theory of the case). Accordingly, Appellant's contention fails.

3. Appellant further argues that due to his "mental condition," the trial court erred by allowing him to decide whether to testify without some further inquiry than the one the trial court conducted.[2] After the State rested, the trial court sent the jury out and asked Appellant whether he had discussed with his attorneys whether he would testify or needed more time:

> COURT: I'll go ahead and give Mr. Jones's admonition now about testifying. Mr. Jones, please stand. Mr. Jones, I am assuming that you've had an adequate opportunity to discuss whether or not you're going to take the witness stand with your attorneys, Mr. Queen and Mr. Tailor. However, I am under an obligation, a duty, to advise you

---

[2] Because the State does not argue that Appellant waived this argument by failing to object at trial and Appellant's argument fails, we assume without deciding that this argument was preserved for ordinary appellate review. Compare *Gibson v. State*, 290 Ga. 6, 9, 11 (717 SE2d 447) (2011) (holding that the defendant's failure to make an objection at trial regarding the defendant's decision not to testify waived the issue for appeal but addressing the merits of the defendant's argument anyway).

11

that even though it's not recommended that you ever do anything without consulting with your attorney first, the law requires me to remind you that you and you alone make the decision about whether or not you will or will not take the witness stand. My only question to you — I don't need to know whether you're going to take the witness stand or not. I know some judges require it, but I don't. What I do need to know from you is if you have had an adequate opportunity to consult with Mr. Queen and Mr. Tailor about taking the witness stand? Yes or no.
APPELLANT: Yes.
COURT: Yes. So you don't need any more time to discuss that issue with them; is that correct?
APPELLANT: No, Sir.
COURT: All right. Very well. State, are you satisfied with the admonition concerning the defendant's right to testify or not testify in this case from the Court?
STATE: Yes, Your Honor.
COURT: Defense?
DEFENSE COUNSEL: Yes.

Shortly afterward, defense counsel requested permission to speak with Appellant alone, which the trial court permitted. Defense counsel then sought additional time to speak with Appellant's mother, which the trial court also allowed. Afterward, the trial court brought the jury back in, and the defense rested without Appellant testifying in his own defense.

"In Georgia, whether or not to testify in one's own defense is

12

considered a tactical decision to be made by the defendant himself after consultation with his trial counsel and there is no general requirement that a trial court interject itself into that decision-making process." *Burton v. State*, 263 Ga. 725, 728 (438 SE2d 83) (1994). We have consistently rejected arguments like the one Appellant makes here. We have observed, for example, that "the trial judge has no duty to advise a defendant of the right to testify or to ascertain on the record whether the defendant's waiver of that right is voluntary, knowing, and intentional." Id. (cleaned up). Likewise, we have noted that "mandat[ing] the trial court to engage in an on-the-record colloquy with a defendant to inquire of the non-testifying defendant whether he desires to waive his right to testify" was not required, although we observed that conducting such a colloquy would be "the better practice." *Barron v. State*, 264 Ga. 865, 866 n.2 (452 SE2d 504) (1995). We have not retreated from that view. See, e.g., *Williams v. State*, 292 Ga. 844, 854 (742 SE2d 445) (2013); *Spencer v. State*, 287 Ga. 434, 438-439 (696 SE2d 617) (2010); *Sanford v. State*, 287 Ga. 351, 355 (695 SE2d 579) (2010); *Gibson v.*

13

*State*, 283 Ga. 377, 380 (659 SE2d 372) (2008).

Appellant does not specifically argue that he was incompetent to stand trial, but merely refers to his impaired "mental condition." Nothing in the record at trial suggested that Appellant wanted to testify or that he did not understand that he was giving up his right to do so. Appellant does not explain what inquiry the trial court was required to provide that it did not, and to the extent he does suggest additional action, such action is not supported by our precedent. See, e.g., *Spencer*, 287 Ga. at 438-439.[3]

4. Next, Appellant contends that the trial court erred in failing to instruct the jury on the lesser offense of voluntary manslaughter and the principle of mutual combat.

Appellant asserts in his brief that the evidence indicated a

---

[3] Although Appellant cursorily suggests in a heading of his brief that his decision to testify "was not knowingly and freely made," Appellant failed to support that contention with any legal argument or citation to authority. Thus, to the extent that this is a different argument, it is abandoned. See former Supreme Court Rule 22 (2023) (providing that enumerations of error not supported by argument or citation to authority are abandoned). See also *Everett v. State*, 318 Ga. 697, 701 n.4 (899 SE2d 699) (2024) (argument that the defendant "purported to enumerate as error" was abandoned under former Rule 22 where the defendant "failed to support this particular assertion with any argument or citation to legal authority").

14

"ferocious struggle" occurred before Parke's death, pointing to evidence that blood was everywhere at the crime scene and that both he and Parke sustained injuries. He argues that this struggle constitutes serious provocation. OCGA § 16-5-2 (a) states:

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

"A trial court is required to grant the defendant's request for a charge on the lesser included offense of voluntary manslaughter if there is any evidence, however slight, to support such a charge." *Wilkerson v. State*, 317 Ga. 242, 247 (892 SE2d 737) (2023) (cleaned up). Whether slight evidence supports the charge is a question of law. See id. Evidence that a defendant and his victim fought prior to a homicide or that a victim resisted a defendant's unlawful act is not

15

the type of serious provocation that the law recognizes as being sufficient to warrant an instruction on voluntary manslaughter. See *Johnson v. State*, 313 Ga. 698, 700 (873 SE2d 123) (2022); *Thompson v. State*, 312 Ga. 254, 258 (862 SE2d 317) (2021).

Parke's apparent struggle with Appellant prior to her death does not constitute serious provocation. See *Funes v. State*, 289 Ga. 793, 795 (716 SE2d 183) (2011) (reiterating that evidence of a fight prior to a killing does not constitute serious provocation). Thus, the trial court did not err in refusing to instruct the jury on voluntary manslaughter.

Nor does evidence of a struggle warrant an instruction on mutual combat. "A finding that a defendant was engaged in mutual combat at the time the victim was killed may authorize the jury to find the defendant guilty of voluntary manslaughter[.]" *Moore v. State*, 307 Ga. 290, 295 (835 SE2d 610) (2019) (cleaned up). "Mutual combat occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a

16

fight."[4] *Venturino v. State*, 306 Ga. 391, 398 (830 SE2d 110) (2019) (cleaned up). "Evidence of an ordinary scuffle or fight typically does not warrant a charge on mutual combat." *Russell v. State*, 303 Ga. 478, 481 (813 SE2d 380) (2018). Similarly, "reluctance, or fighting to repel an unprovoked attack, is self-defense, and is authorized by the law, and should not be confused with mutual combat." *Tidwell v. State*, 312 Ga. 459, 463 (863 SE2d 127) (2021) (cleaned up). Appellant has not pointed to any evidence of "combat between" Parke and him "as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight." *Venturino*, 306 Ga. at 398 (cleaned up). See also *Tidwell*, 312 Ga. at 463 (holding that the trial court did not err in failing to instruct on mutual combat where the victim "was ambushed" by the defendant and others and tried to protect himself); *Wainwright v. State*, 305 Ga. 63, 72 (823 SE2d 749)

---

[4] We continue to recognize a conflict in Georgia law as to whether mutual combat requires both combatants to be armed with deadly weapons. See *Moore*, 307 Ga. at 296 n.9; *Russell v. State*, 303 Ga. 478, 481 n.2 (813 SE2d 380) (2018); *White v. State*, 287 Ga. 713, 723-724 (699 SE2d 291) (2010). However, we need not resolve that conflict here.

(2019) (rejecting argument that a voluntary manslaughter instruction based on mutual combat was warranted where the victims tried to defend themselves). Accordingly, the trial court did not err in failing to instruct on mutual combat.

5. Finally, Appellant argues that the trial court erred in sentencing him to life without parole by failing to properly consider the mitigation evidence he presented.[5] At the sentencing hearing, Appellant presented the testimony of Dr. Allison Paganelli, a psychologist. Dr. Paganelli testified that she evaluated Appellant before the trial in this case and concluded that he was competent to stand trial as an adult. Dr. Paganelli diagnosed Appellant with post-traumatic stress disorder, a language disorder, and other disorders,

---

[5] The State does not argue that Appellant waived this argument by failing to object at sentencing and only raising the issue for the first time in his amended motion for new trial. Because Appellant's argument fails, we assume without deciding that Appellant preserved this argument. Compare *Marshall v. State*, 309 Ga. 698, 701-704 (848 SE2d 389) (2020) (holding that the defendant waived alleged sentencing error where the sentence was not void and he "did not raise this claim in the trial court, either at the presentence hearing or in his motion for new trial, and his trial counsel affirmatively waived any objection . . . by stating the defense had no argument to make" about the alleged sentencing error).
.

noting that his brain resembled that of a teenager. Finally, Dr. Paganelli testified that Appellant's symptoms could be managed through medication and treatment. At the close of the hearing before sentencing Appellant, the trial court told Appellant, "I've considered the mitigation that you and your attorney have presented."

OCGA § 16-5-1 (e) (1) provides, "A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life." "Although the legislature defines crimes and sets the ranges of sentences, trial courts generally have the discretion to fashion sentences that fit the crimes [of] which the defendant is convicted, so long as the sentences fall within the statutory ranges." *State v. Riggs*, 301 Ga. 63, 68 (799 SE2d 770) (2017) (cleaned up). Moreover, if sentences that trial courts impose fall within the statutory limits, appellate courts generally will not review them. See *Monroe v. State*, 250 Ga. 30, 36 (295 SE2d 512) (1982).

Life without parole falls within the statutory sentencing parameters for murder, see OCGA § 16-5-1 (e) (1), and the trial court

expressly stated that it considered Appellant's mitigation evidence before announcing its sentence. Accordingly, Appellant's claim that the trial court erred in sentencing him to life without parole fails.

*Judgment affirmed. All the Justices concur.*

Decided May 29, 2024.

Murder. DeKalb Superior Court. Before Judge Lake.

*William D. Hewitt*, for appellant.

*Sherry Boston, District Attorney, Agatha K. Romanowski, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Elizabeth Rosenwasser, Assistant Attorney General*, for appellee.